J. LOYALIST BROWNE and others, in equity, *vs.* INHABITANTS OF BOWDOINHAM.

· Sagadahoc.   Opinion April 12, 1880.

*Town ways — may be established by deed of land for a road and acceptance by the town.*

The existence of a legal town road, upon which the money of the town raised for the purpose of maintaining town and highways, may lawfully be expended, may be established by other evidence than the record of proceedings under the statute, to have the same laid out by the municipal officers and accepted by the town. It may be established by proof of dedication of the land by the owner, and acceptance by the town for that purpose.

A deed from the owner of the land to the inhabitants of the town, conditioned for the maintenance by the grantees, in a proper manner of a road, which he has constructed over the premises conveyed, as a town road, and a regular acceptance of the conveyance by the town at a regular meeting under a proper article in the warrant, is sufficient proof of such dedication and acceptance to make the way a legal town way, open like all other town ways for the use of the public generally, when they have occasion to use it. Money raised by the town for the support of roads may lawfully be expended · on it.

BILL IN EQUITY, to restain the town from expending money raised for the support of ways, upon a road established by the following deed and vote of the town :

Deed. "Know all men by these presents, that I, Robert Jack, of Bowdoinham, in the county of Sagadahoc, and State of Maine, in consideration of one dollar paid by the inhabitants of Bowdoinham, the receipt whereof I do hereby acknowledge, do hereby give, grant, bargain, sell and convey unto the said inhabitants of the town of Bowdoinham, the following described piece or parcel of land, situated in Bowdoinham, in the county of Sagadahoc and bounded and described as follows, to wit : commencing on the northern side of town way, near Robert Jack's

stable, thence running southeast by east forty-six rods, opposite
John Brown's dwelling house ; thence running southeast by east,
one-half east, twenty-nine and one-half rods opposite John L.
Brown's house ; thence running south, southwest ten rods opposite
the said Robert Jack's house on Abbagadasset point ; thence south
by west eight rods ; thence east, southeast forty rods to low
water mark on Kennebec river ; thence two rods southerly by
low water mark ; thence W. N. W. forty rods ; thence N. by E.
eight rods ; thence N. N. E. ten rods ; thence N. W. by W.
one half W. twenty-nine and one-half rods ; thence N. W. by W.
forty-six rods to the said town way ; thence northerly to the first
mentioned bounds ; meaning to convey the land graded up and
made a road, by said Jack, two rods in width, *on condition* that
said grantees maintain a town road over the premises, and keep
the same in good repair, so that the same may be safe and con-
venient for travelers, *as by law provided.*   To have and to hold
the aforegranted and bargained premises with all the privileges
and appurtenances thereof, to the said inhabitants of Bowdoinham,
to their use and behoof forever, so long as they shall maintain
and keep in repair the road aforesaid over said premises.   And
I do covenant with the said inhabitants of Bowdoinham, that I
am lawfully seized in fee of the premises, that they are free of
all incumbrances, that I have good right to sell and convey the
same to the said inhabitants of Bowdoinham to hold as aforesaid,
and that I and my heirs shall and will warrant and defend the
same to the said inhabitants of Bowdoinham against the lawful
claims and demands of all persons.   In witness whereof, I, the
said Robert Jack and Nancy M. Jack, wife of the said Robert
Jack, in testimony of her relinquishment of her right of dower
in the above described premises, have hereunto set our hands
and seals this twentieth day of February, in the year of our
Lord, one thousand eight hundred and seventy-eight."

Signed, sealed and delivered in the   } ROBERT JACK,   (SEAL.)
   presence of Edward J. Millay.       } NANCY M. JACK, (SEAL.)
       Acknowledged same day.

   Article in warrant for town meeting, dated February 20, 1878 :
"To see if the town will vote to accept as a gift to the inhabi-

tants of said town the following road already constructed by
Robert Jack, to wit: Leading from the terminus of the town
way at said Robert Jack's stable to the Kennebec river, at low
water mark, according to warranty deed, dated February 20,
A. D., 1878."

Vote at town meeting March 4, 1878 : "Voted to accept as a
gift a road from Capt. Robert Jack already constructed, to wit:
Leading from the terminus of the town way at said Robert
Jack's stable to the Kennebec river, at low water mark, accord-
ing to warranty deed, dated February 20, A. D., 1878.

It was agreed that the town meeting of March 4, 1878, was
a legal meeting and that the road described in the bill had been
opened to public travel by the town for a year prior to the date
of the bill, and that the selectmen had made repairs upon it
during that time.

J. W. *Spaulding* and *F. J. Buker*, for the plaintiff, cited:
R. S. c. 18, § 44; *Hemphill* v. *Boston*, 8 Cush. 195; *Marquis
of Stafford* v. *Coyney*, 7 B. & C. 257; *Commonwealth* v. *Low*,
3 Pick. 408; *Avery* v. *Stewart et als.* 1 Cush. 501; *Common-
wealth* v. *Belding*, 13 Met. 10; R. S., c. 18, § 68; *Maine* v.
*Strong*, 25 Maine, 296; *Cleaves* v. *Jordan*, 34 Maine, 9;
*Waterford* v. *Co. Com'rs*, 59 Maine, 450; *State* v. *Sturdivant*,
18 Maine, 66; R. S., c. 18, § 21; *Bartlett* v. *Bangor*, 67 Maine,
460; *Todd* v. *Rome*, 2 Maine, 55; *State* v. *Berry*, 21 Maine,
169; *State* v. *Bunker*, 59 Maine, 366; *Hobbs* v. *Lowell*, 19
Pick. 408; *Valentine* v. *Boston*, 22 Pick. 75; *Larned* v.
*Larned*, 11 Met. 423; *Commonwealth* v. *Holliston*, 107 Mass.
232; *Mayberry* v. *Standish*, 56 Maine, 348; *Windham* v. *Co.
Com'rs*, 26 Maine, 409.

Counsel contended that an underlying principle, disclosed by
the authorities cited, seemed to be, that a way established by
dedication and acceptance, could not be a town way, and that
the condition of the deed, requiring a "town road" to be main-
tained, could only be performed by establishing a town way over
the premises in the manner provided by the statutes—a simple
method familiar to everybody. And the effect of the deed was
only to relieve the town of damages to land owner and give them
the benefit of Capt. Jack's labor in constructing the road.

*C. W. Larrabee*, for the defendant, cited : *Cleaves* v. *Jordan*, 34 Maine, 12 ; R. S., c. 1 ; § 1 ; c. 19, § 1 ; c. 18, § § 44, 77 ; *Windham* v. *Co. Com'rs*, 26 Maine, 406 ; *Mayberry* v. *Standish*, 56 Maine, 355 ; *Stedman* v. *Southbridge*, 17 Pick. 162 ; *Hill* v. *Turner*, 18 Maine, 413 ; *Todd* v. *Rome*, 2 Maine, 55 ; *Hemphill* v. *Boston*, 8 Cush. 195 ; *Stafford* v. *Coyney*, 7 B. & C. 39 ; *Commonwealth* v. *Low*, 3 Pick. 408 ; 2 Smith's Leading Cases, 208–212 ; *Peck* v. *Smith*, 1 Conn. 103 ; 2 Dill. Mun. Corp. 503–505.

BARROWS, J.   The diligent counsel for the plaintiffs have labored zealously to construct out of various dicta, uttered. *diverso intuitu*, and applicable almost exclusively to the cases in which they are found, together with some early cases in Massachusetts and this State which have since been rejected by both courts, an argument in favor of the proposition that there is no mode in which a town road or way can be established, except the statute method of condemning the land and appropriating the easement by the action of the municipal officers in laying it out for a road, and the subsequent vote of the town accepting it ; and, as a sequence, the further proposition that when the town has recived and accepted a conveyance of land from the owner· upon condition that they will maintain a road already constructed over it as a town road, "and keep the same in good repair, so that the same may be safe and convenient for travellers as by law provided," they cannot lawfully appropriate or use the town's money for the performance of the condition under which they hold the estate.

The ingenious effort of counsel fails to satisfy us that these propositions can be maintained.

The statute provisions are made in order to enable the town and the public to acquire a needed easement against the owner of the soil, whether he be willing or unwilling, and to secure to the owner of the land a mode of ascertaining, and a certain. payment, of the damages to which he is entitled.

But we know of no law which prevents the owner of land from waiving any possible claim which he might have for damages, and conveying the land to the town, upon condition that they will

maintain a town road, street, or any other sort of public way over it; or which forbids a town to accept such a conveyance, and perform the required condition; or which makes it necessary for the town holding the estate upon such a condition to incur what would seem under such circumstances to be the useless expense and trouble of a statute location. The town has acquired by the deed, something more than the mere easement which a location under the statute would give them, — something more than a mere verbal dedication of the land for a public way would give them, when accepted.

Their interest and their obligation are both defined by the deed under which they hold. *Lex non cogit ad vana seu inutilia.* Why should they proceed to appropriate an easement by statute proceedings, when they have the fee in the soil, "so long as they shall maintain and keep in repair the road aforesaid over said premises?" We see no illegality in their proceeding to protect their estate from forfeiture by a performance of the condition under which they hold it. The plaintiffs contend that there can be no performance of the condition in Robert Jack's deed, unless, in addition to its acceptance and the maintenance by the town of the road, which as the deed recites, has been graded up and made over the premises by the grantor, the town proceeds to lay out a town road there in the manner prescribed by the statute. The condition does not call for the laying out of a town road, but requires the grantees to maintain one and keep it in good repair, so that the same may be safe and convenient for travelers, &c. "Maintain,—to preserve or keep in any particular state or condition,—to continue,—not to suffer to cease." The word itself imports that the road which Jack wished to have "maintained" was already there.

It never can be successfully contended that the grantor had in his mind any technical distinction between a public highway and a town road, so far as the mode of their laying out is concerned, —such as the court have been sometimes called to deal with in indictments, where technical exactness is required. The design of the condition obviously is to secure the maintenance of the road in a proper manner, as other town roads, — *i. e.* roads,

which are all included within the limits of the town, are maintained. The grantor had no motive for using the words "town road" in any technical sense. The rights of the general public, of all who have lawful occasion to use them, are the same in town roads as they are in highways leading from town to town, and laid out by the county commissioners. As remarked by AMES, J., in *Denham* v. *County Commissioners*, 108 Mass. 204 : "All the different ways which towns are authorized by law to lay out, are in truth public highways, for the public without discrimination has the right to use them. It is wholly immaterial by what name they are called.

No object which the grantor could have had would be subserved by a laying out of this road by the selectmen or an acceptance by the town. If the town fail to perform the condition they forfeit the estate granted, and the grantor or his heirs may enter and reclaim it for the breach of condition. A vote to discontinue would not be necessary for that purpose, though it might have the same effect. But all that the grantor need show would be an actual breach of the condition, and a re-entry to claim the forfeiture.

The case of *Commonwealth* v. *Low*, 3 Pick. 408, upon which the plaintiffs chiefly rely to establish the proposition that a town way can be established only in the mode prescribed by the statute, was overruled in *Commonwealth* v. *Belding*, 13 Met. 10 ; see also, remarks of HUBBARD, J., in *Larned* v. *Larned*, 11 Met. 421, to the effect that however it might once have been doubted whether a way was ever made by dedication, "it is now definitively settled" that it may be done ; "and this is true not only of a highway but of a town way or private way."

The case of *State* v. *Sturdivant*, 18 Maine, 66, in which SHEPLEY, C. J., says the court followed the Massachusetts court in *Commonwealth* v. *Low*, "not without some reluctance," was overruled in *State* v. *Bigelow*, 34 Maine, 246, and the law as now held in this State on this point is as stated in the latter case, and in *Bigelow* v. *Hillman*, 37 Maine, 52, where RICE, J., remarks that the "the existence of either class" (highways, townways or private ways,) "may also be established by proof of.

dedication" (including of course acceptance,) "or such long continued use as will raise the presumption that they were legally established." See also, for a full review of the cases and definition of the different kinds of ways, *State* v. *Bunker*, 59 Maine, 366.

We think the case, as stated, shows a town way legally established, upon which the town may lawfully expend "money raised for the maintenance of town and highways."

> *Bill dismissed with costs*
> *for the respondents.*

APPLETON, C. J., WALTON, DANFORTH, LIBBEY and SYMONDS, JJ., concurred.