DAVID L. BARTLETT *vs.* NELLIE E. HARMON.

York.    Opinion January 25, 1911.

*Dedication.    Recording Plots.    Parks.    Construction.*

In the absence of facts showing a contrary intention, the plotting of land, with parcels designated as parks, recording of the plan, and sale of lots with reference thereto ordinarily constitute a dedication of such parcels.

Dedication is the intentional appropriation of land by the owner to some proper public use, reserving to himself no rights therein inconsistent with the free exercise and enjoyment of such use.

A lease of lots belonging to an association owning a large tract of plotted land, subject to the association's right to " use, lay out, and lease all lands not already laid out or designated, as streets or avenues," negatives an intention to dedicate, as a park, land designated on the plot as a park; and permitted the association, as against one claiming under the lease, to lease the park for private purposes, and the holder of the last mentioned lease to make certain improvements therein.

Construction of a reservation in a lease of land as permitting the lessor to lease, for private purposes, neighboring land plotted as a park, is aided by the fact that for several years a cottage was maintained on the land under a lease without objection by the lessee under the first mentioned lease.

On exceptions by plaintiff.    Overruled.

Action on the case.    The plaintiff's cause of action is stated by the declaration in his writ as follows :    "In a plea of the case for that heretofore, to wit, on the second day of October A. D. 1906, and continually thereafter until the day of the purchase of this writ, said plaintiff was seized in his demesne as of fee in a certain tract or parcel of land situated in Old Orchard, in the county of York and State of Maine, and described as follows, viz :    All that certain plot, piece or parcel of ground known and designated as lots numbers 16 and 18 on Zion's Avenue on the map of lots on Camp Ground of the Orchard Beach Camp Meeting Association, and an interest and right in and to the premises known and plotted on said

map as Zion's Park, to have said park kept free from buildings and obstructions and to be opened and used as a park with trees then and there thereon standing ; yet the said defendant well knowing the same, but contriving and intending to injure and unjustly vex the plaintiff and exclude him from the use and enjoyment of said last described lot of land, to wit, said park, and injure and vex him in the use and enjoyment of said first described lot of land, heretofore, to wit, on the second day of October A. D. 1906, erected on said last mentioned lot a building, and maintained said building thereon from said date until the day of the purchase of this writ; and further unjustly contriving and intending to injure and vex the plaintiff as aforesaid, heretofore, to wit, on said second day of October A. D. 1906, and on divers other days and times between said date and the day of the purchase of this writ cut down and destroyed several large trees then and there standing on said last mentioned lot, to wit, said park ; whereby the said plaintiff was greatly injured in the enjoyment and use of said premises, to the damage of the said plaintiff, as he says, the sum of $500." Plea, the general issue with brief statement as follows : "That if the said plaintiff ever did have an easement in premises described in said writ, that he has stood by for a long period of time, to wit, ten years, and allowed without protest and without making any claim to said easement, the defendant and others to make valuable improvements and alterations of property described in his said writ. That on the first day of January, A. D. 1906, he forever abandoned any easement he now claims in said premises and because of his acts and his failure to act said plaintiff is forever estopped to claim or set up any right of action to an easement in said premises in the manner and form as said plaintiff in his writ has declared against said defendant."

At the conclusion of the testimony, the presiding Justice directed a verdict for the defendant and the plaintiff excepted.

The case is stated in the opinion.

*Geo. F. & Leroy Haley*, for plaintiff.

*H. & W. J. Knowlton, and Cleaves, Waterhouse & Emery*, for defendant.

SITTING : EMERY, C. J., SAVAGE, PEABODY, SPEAR, CORNISH, KING, JJ.

CORNISH, J. This is an action on the case brought by the plaintiff, the owner of two lots of land, upon which he has a summer cottage, situated in the Camp Meeting Ground so called, at Old Orchard, against the defendant, who claims to be the owner of a lot of land in the same Camp Ground, for erecting a building and making additions thereto and for cutting down trees upon that part of the Camp Ground designated upon the plan as Zion's Park.

The history of the case shows that the Orchard Beach Campmeeting Association, being the owner of a large tract of land, caused the greater part of it to be laid out and plotted in lots, streets, avenues and parks and a plan of the same to be filed in the Registry of Deeds. It then proceeded to give leases of various lots for a term of ninety-nine years, and subsequently deeds were given so that the title was held in fee. On June 18, 1874, the plaintiff's predecessor in title, Francis Meeds, was given a ninety-nine year lease of lots Nos. 16 and 18 on Zion's Avenue "on the Map of Lots of Camp Ground" of said Association, subject to certain restrictions and regulations which were declared in the lease to be assented to by the lessee. Among others was the following : "The Association reserves the right, at all times to use, lay out, and lease, all lands not already laid out or designated, as streets, or avenues." This lease is the source and extent of the plaintiff's title, the plaintiff having obtained his deed on September 28, 1894. A summer cottage had been built upon these lots prior to the plaintiff's purchase.

On the Map of Lots of Camp Ground, according to which this conveyance was made, was an open and unoccupied track marked "Zion's Park" situated directly across Zion's Avenue, which is only about twelve feet wide, from the plaintiff's lots and in the line of, but not obstructing, the view of the sea.

On November 7, 1891, the Association conveyed by a ninety-nine year lease in the same form and with the same restrictions, to one C. W. Stevens, "all that certain plot, piece or parcel of ground known, and designated as Zion's Park on the Map of Lots of Camp Ground,"

and confirmed the same by warranty deed dated March 22, 1894. Stevens conveyed the same to one Robbins August 11, 1896, Robbins to Free, June 5, 1899, and Free to the defendant August 9, 1905.   In 1897 or 1898 a story and a half cottage was built by the then owner Robbins upon Zion's Park across Zion's Avenue from the plaintiff's lots, covering his front about 35 feet, and has stood there since.   In 1906 or 1907, the defendant made additions to this cottage and cut a few trees on the premises.   This suit followed.

The plaintiff bases his right of action upon the alleged dedication of Zion's Park as a public park by the Association, so that the owners or lessees of adjoining lots who purchased according to the plan, have a right to have said parcel of land, designated as a park, kept forever open as such.   Were that the only question involved the plaintiff's claim might be readily acknowledged because it is familiar law that in the absence of facts showing a contrary intention, these acts before recited on the part of the Association, the plotting of the land, the laying out and designation of certain parcels as parks, the recording of the plan and the selling of lots with reference thereto, would be sufficient to work a dedication, *Camp Meeting Association* v. *Andrews*, 104 Maine, 332, 20 L. R. A., N. S., 976.   Dedication extinguishes title in the dedicator so that none in the Park if dedicated could have been subsequently conveyed by the Association to Stevens, the first lessee in the defendant's chain of title.

But, as the court say in *Camp Meeting Association* v. *Andrews*, supra, at page 346 ;  "Dedication is the intentional appropriation of land by the owner to some proper public use, reserving to himself no rights therein, inconsistent with the free exercise and enjoyment of such use."   In the case at bar in the leases given by the Association to all the lessees, the plaintiff's predecessor in title among the number, there was an express reservation that negatived any intention to dedicate these parcels designated as parks.   The decision of this case therefore depends upon the construction of this clause : "The Association reserves the right at all times, to use, lay out and

lease, all lands not already laid out or designated, as streets or Avenues." What is its fair and natural interpretation?

This plaintiff reads this as meaning that the Association reserved the right to use, lay out, and lease all lands with two exceptions, first, all lands not already laid out or plotted, and second, all lands not designated as streets or avenues; and places Zion's Park in the first exception. The words do not permit this. Nor does the sense. That would leave in the reservation only such land as had neither been laid out in parks, plotted for lots nor designated for streets or avenues, or in other words, waste or unplotted land if any. But why should such a reservation be made? It would be needless, as the Association would have, without it, full right to use or lay out or lease such unplotted lands. Such interpretation violates the dictates of common sense.

The presence of the comma in the last line might authorize the transposition of the last clause so that the sentence would then read "the Association reserves the right, at all times, to use, lay out and lease as streets or avenues, all lands not already laid out or designated." This would be equally meaningless, and proves the truth of the assertion in *State* v. *McNally*, 34 Maine, 210, that punctuation is often an uncertain guide, or as held in *Blood* v. *Beal*, 100 Maine, 30, and *Taylor* v. *Caribou*, 102 Maine, 401, it is entitled to consideration but is not of paramount importance.

We therefore are forced to fall back upon the only reasonable construction, which disregards the comma and places within the reserved rights, all lands not previously designated as streets or avenues. There is then no ambiguity about the sentence. The meaning is obvious and the purpose plain. The streets and avenues were fixed. There was no desire or intention to withdraw or change them. But all other lands including the designated parks could be withdrawn and plotted if at any time the Association should see fit to do so. The parks were placed within the reservation and not within the exception thereto. An inspection of the original plan shows many of these so called parks or unoccupied spaces, and their future disposition was expressly retained by the Association.

It is significant that the parties themselves for many years accepted the construction which we now adopt.   The Association expressed its view by conveying Zion's Park as far back as 1891, by lease to Stevens, which was recorded August 9, 1892, two years before the plaintiff purchased and sixteen years before this suit was brought.   Moreover in 1896 or 1897, two or three years after the plaintiff purchased his lots, the then owner of Zion's Park constructed a cottage upon it directly in front of and across the narrow street from the plaintiff's house, thus obstructing his view of the sea to a considerable extent.   That cottage continued to be occupied for eleven or twelve years without any objection whatever on the part of the plaintiff, until some friction seems to have arisen between the families when this suit was brought.   It is apparent that both parties construed the deed in the same way for many years, a fact that it is proper to consider.   *Oakland Woolen Mill Co.* v. *Union G. & E. Co.*, 101 Maine, 198.

It is the opinion of the court that upon the whole case it was not the intention of the Association to dedicate Zion's Park to the public or for the benefit of other lot owners in the Camp Ground, and that the ruling of the presiding Justice directing a verdict for the defendant was without error.

*Exceptions overruled.*