Robert D. VACHON

v.

The INHABITANTS OF the TOWN OF LISBON and Maine School Building Authority.

Supreme Judicial Court of Maine.

Sept. 20, 1972.

Skelton, Taintor & Abbott, by Frederick G. Taintor, Kenneth C. Young, Jr., Lewiston, for plaintiff.

Louis Scolnik, Lewiston, for Town of Lisbon.

John W. Benoit, Jr., Deputy Atty. Gen., Augusta, for Maine School Bldg. Authority.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

On report.

The plaintiff instituted a complaint against the Inhabitants of the Town of Lisbon (Town) seeking to obtain an order directing the Town to improve and "formally" accept certain land as a public street. The Town, asserting that Maine School Building Authority (Authority) owns the land, denied any responsibility for further action on its part, either to accept the land as a street or to improve it. The Authority, on motion, was allowed to intervene as a defendant, claiming title to the disputed area, and alleging that the relief sought by the plaintiff would "impair" the Authority's ability to protect the interest of holders of its bonds.

The basic issue which must be decided is whether this parcel of real estate, a strip 50 feet wide and 428 feet long, the only access to school property from Main Street in Lisbon, is a public way.

The parties stipulated the facts, but a summary is essential to bring the issue into focus.

On April 15, 1958, Fenwick W. and Ida Mae Gartley conveyed two parcels of land to the Town, reciting in their deed that the second parcel, the 50′ x 428′ strip, "is conveyed and accepted with the agreement of the parties herein that it shall be dedicated, improved and accepted by the Town of Lisbon as a public street."

Thirteen months later (May 27, 1959) the Town, by warranty deed with unrestricted covenants, conveyed, inter alia, this "strip" to the Authority "subject to rights of the public to use the same as a public street." This deed also recites that it described "the same premises conveyed to the Town" by the Gartleys' deed of April 15, 1958. Although the agreed statement does not include a precise description of the action taken by the municipality, the brief of the Authority asserted that there was a "vote of the inhabitants of Lisbon to

convey . . . to the Authority." Additionally, a copy of the deed to the Authority is included in the stipulated facts and this, executed by the Town Treasurer, recites that he was "hereunto duly authorized." The plaintiff's rebuttal brief does not dispute that authority was thus obtained.

On January 30, 1959, the Authority voted to authorize a "Lease Agreement" with the Town which was dated "for convenience" on February 1, 1959, and which was authorized by a vote of the Town on "February 25, 1970 [sic]."

Without any prior vote ever having been taken, on March 14, 1970, the Town voted "to indefinitely postpone" acceptance of the disputed land as a public street.

The Gartleys are predecessors in title to what is now the plaintiff's property, although not his immediate grantors. After their conveyance to the Town, and before a deed to the plaintiff's more immediate predecessors in title, the Gartleys sold two small lots, both of which abut the area in dispute. The first of these deeds, to Maurice C. and Frances T. Gagnon, dated December 16, 1958, utilized 150 feet of the "strip" as its northerly bound, but without further comment. On April 27, 1959, the second deed, to Henry I. and Irene P. Jacques, was executed and, while referring to the "strip" as a northerly bound, includes this statement:

"It is specifically agreed between the parties to this deed that the grantees shall not have any right of way by necessity over land of these grantors and shall have only such right-of-way as may be granted by the Town of Lisbon over

its parcel of land or dedicated by said Town as a public way." [1]

Basically, the plaintiff acquired title to his land by deed dated January 13, 1969, and his northerly line extends from the Jacques lot to the School lot and is bounded northerly by the area in dispute. A plan of the property in the record indicates that unless the plaintiff uses the "strip" he has no means of access from this property to any public way.

■ The action, by agreement of all parties, was reported to this Court on the pleadings and agreed statement of facts "for such final decision as the rights of the parties may require." Although we have before us the agreed factual statement, we must supplement it by drawing such factual inferences therefrom as we feel are indicated. For example, the actual intent of the Gartleys in using the language quoted from their deed to the Town must be determined. Therefore, and as an incident to arriving at a proper legal result, this Court is required to interpret what, in fact, the Gartleys intended by the use of this language. This approach to cases which are in the Law Court "on report" has been recognized. Dansky v. Kotimaki (1925), 125 Me. 72, 130 A. 871.

"This power of the Court to pass upon the facts of a case, however, is incidental to its jurisdiction to pass upon the questions of law properly presented by the report."

Hand v. Nickerson (1953), 148 Me. 465, 469–470, 95 A.2d 813, 816. Although the Justice below framed the issues for our decision,[2] we do not feel that answers to

---

1. At this time the Gartleys owned approximately 350′ of remaining land adjacent to Main Street. The Gagnons' deed described land lying between Main Street and the Jacques property so that access to Main Street was available to the Jacques only over the Gartleys' remaining land or by use of the "strip" previously conveyed to the Town.

2. "1) Whether or not by acceptance of the deed, dated April 15, 1958, recorded in An-

droscoggin County Registry of Deeds, Book 780, Page 431, the Town of Lisbon did accept property described in said deed as Parcel B.

"2) If the answer to Question 1. is in the negative, whether the Town of Lisbon has become obligated to designate it as a public way.

"3) If the answer to either Question 1. or Question 2. is in the affirmative, whether the Maine School Building Au-

these precise questions will settle the legal issues arising from the facts, for reasons that will appear.

The authority to report cases to the Law Court is found in M.R.C.P., Rule 72(b), which provides:

"(b) *Report on Agreed Facts.* The court may, upon request of all parties appearing, report any action to the Law Court for determination where there is agreement as to all material facts, if it is of the opinion that any question of law is involved of sufficient importance or doubt to justify the same."

Rule 72(b), adopted for economy and expediency, is aimed at a "determination" of the action; *i.e.,* a final judgment under which the controversy is put to rest.

 Since the pre-rule decisional law looked with disfavor on "piece meal, one question at a time" reporting of issues to the Law Court, we conceive it to be our duty to determine, on the record, the final outcome of the action, and without regard to the limitations placed thereon (here undoubtedly by inadvertence) by the order of the Justice below. Mather v. Cunningham (1910), 107 Me. 242, 78 A. 102; Fidelity & Casualty Co. v. Bodwell Granite Co. (1906), 102 Me. 148, 66 A. 314. The rule does not give the parties to an action the right, unless it be under Rule 72(c) involving reports of interlocutory matters, to limit the power of the Law Court to reach a final determination of the action reported.

 We conceive the law in Maine to recognize three methods by which public

ways may be created; namely, 1) by prescriptive use, 2) by the statutory method of laying out and accepting a way,[3] and 3) by dedication and acceptance. *See* 11 E. McQuillin, Municipal Corporations §§ 33.-01-.80 (3rd rev.ed.1964). Method 1, admittedly, has no bearing on the status of the area here in dispute. Because the stipulated facts do not indicate any petition by anyone requesting the municipal officers to "lay out" this land as a street, no return filed with the town clerk by the officers of having done so, and no acceptance vote by the town, it is obvious that the statutory method was not followed.

We must, therefore, consider the third method. This mandates a discussion, first, of the meaning of the words "dedication" and "acceptance."

In speaking of "dedication" our Court has used this language:

"Dedication is an appropriation of land to some public use, made by the owner, and accepted for such use by or on behalf of the public. There must be a clear intent to so dedicate. Mere acquiescence by the owner in occasional and varying use by the public is not sufficient to establish dedication. See Bouvier's Law Dictionary (Eighth Edition or Rawle's Third Revision), citing Northport Wesleyan Grove Campmeeting Association v. Andrews, 104 Me. 342, 71 A. 1027. . . .

Whether there is an intent to dedicate to the general public, and the acceptance by the public are of course questions of fact. The intention must be unequivo-

---

thority has standing to maintain that the land is not already accepted or required to be accepted as a public way by the Town of Lisbon."

3. 23 M.R.S.A. § 3001:
"The municipal officers . . . may on petition therefor . . . lay out . . . town ways . . . . . They shall give written notice of their intentions, to be posted for 7 days . . . and they shall determine whether it shall

be a town way or a private way . . . ."
23 M.R.S.A. § 3003:
"A written return of the proceedings of the municipal officers under sections 3001 . . . shall be made and filed with the town clerk in all cases. The way is not established until it has been accepted in a town meeting legally called, after the return has been filed, by a warrant containing an article for the purpose."

cally and satisfactorily shown. Acts and circumstances may rebut evidence that may indicate the owner's intention, such as location, value, local conditions, treating the land as his own, leasing, maintaining a fence, etc. White v. Bradley, 66 Me. 254; Bartlett v. Harmon, 107 Me. 451, 78 A. 842; Littlefield v. Hubbard, 124 Me. 299, 128 A. 285, 38 A.L.R. 1306; Piper v. Voorhees, 130 Me. 305, 155 A. 556."

Baker v. Petrin (1953), 148 Me. 473, 479–480, 95 A.2d 806, 810.

Applying these doctrines to the facts before us, we must first determine the Gartleys' intent in using the language which we have quoted from their deed to the Town.

■ From the use of the words "this parcel *is* conveyed . . . with the agreement" (emphasis supplied), we draw the inference of a *present* intent by the Gartleys that the strip of land be dedicated, on acceptance by the Town, for use as a public street. Otherwise, this language serves no purpose. This conclusion is fortified with the knowledge that, on the date this deed was executed, the Gartleys owned all the land on both sides of the "strip" lying between Main Street and the proposed school lot likewise conveyed on this same date and by the same instrument. It is not logical to infer that the Gartleys would, intentionally, isolate at least a part of their remaining land from access to Main Street, thus greatly depreciating its value.

This intention, we feel, is further evidenced by the language used in the Jacques deed where the possibility of a right of way by necessity was clearly excluded, leaving to the Jacques only the "strip" as a means of access to Main Street. No such language appeared in the Gagnon deed, there being no necessity for it because the lot fronted on Main Street.

Finally, when the Town conveyed to the Authority in 1959, the words "subject to rights of the public to use the same as a public street" evidenced no misunderstanding then by the Town of the Gartleys' intention in conveying the access area to the Town.

We find the record satisfactorily and unequivocally demonstrates that the Gartleys intended to dedicate this parcel of land as a public street.

The next issue is whether the record supports a finding of an acceptance by the Town of the land so dedicated.

■■ One obvious way to accept dedicated land, of course, is by an appropriate article in a warrant for a town meeting affirmatively acted on. Browne v. Bowdoinham (1880), 71 Me. 144. Without expressly defining the required procedures therefor, our Court has left no doubt that some affirmative act by a municipality in acceptance of a grant for street purposes is required. Swan Co. v. Dean (1955), 151 Me. 359, 118 A.2d 890; Farnsworth v. Macreadie (1916), 115 Me. 507, 99 A. 455. The act must be, of course, indicative of acceptance; *i.e.,* of agreeing to the terms of the dedication. It was suggested, for example, in Northport Wesleyan Grove Campmeeting Association v. Andrews (1908), 104 Me. 342, 347, 71 A. 1027, 1029, that the "actual enjoyment by the public of the use for such a length of time that the public accommodation and private rights would be materially affected by a denial or interruption of the enjoyment" would be an adequate acceptance of a dedication.

■ We conclude that a formal vote of a municipality affirmatively accepting the conditions of a deed whereby land is dedicated by the Grantor for a public way, while an appropriate method of acceptance, is not the exclusive way in which the end result may be accomplished.

From the record before us, we find at least two formal and affirmative acts of the municipality accepting the dedication of the land as a public street.

First, the deed to the Authority dated May 27, 1959, in warranty form, and authorized by a vote of the Town, conveyed the land acquired by the Town on April 15, 1958, and did so "subject to the rights of the public to use the same as a public street." What more direct proof could be adduced of an acceptance of the dedication? The vote to authorize the execution and delivery of this deed was an affirmative act of the Town clearly indicating that it accepted the 50' x 428' parcel on the conditions attached by the Gartleys; namely, that it become "a public street."

We may test this conclusion by *assuming* that the deed to the Authority was an outright and unreserved grant of the fee in this land. The result might well have been that the Gartleys, at that time still owning the surrounding land, could on their re-entry, claim a forfeiture. Hooper v. Cummings (1858), 45 Me. 359; Browne v. Bowdoinham, *supra*. The actual locus of the school buildings, under these conditions, would be without access to Main Street, or any other public way so far as the record indicates. It is inconceivable that the Town, by authorizing the execution of a warranty deed, would subject itself to an immediate claim for breach of warranty, the deed containing unrestricted covenants of title and a covenant that the premises were free from encumbrances.

23 M.R.S.A. § 3001 authorizes the municipal officers, in laying out a way, to "determine whether it shall be a town way or a private way," and we deem it of significance that the reservation in the deed to the Authority is for a "public street," *not for a private way*. Again, this is entirely consistent with the intent manifested by the Gartleys in dedicating the realty to use as a "public street." It is inconsistent with any contra intent by the Town in accepting the dedicated land.

Secondly, we recognize the purpose for which the Maine School Building Act was adopted; namely, to afford means, independent of direct municipal borrowing, of financing school construction. The constitutional prohibitions and limitations on direct municipal borrowing [4] are thus avoided.

We also recognize the plan envisioned by this Act which, for our purposes, needs only to be stated in abbreviated form. Briefly, a town conveys land destined for school purposes to the Authority which, in turn, having issued revenue bonds to obtain necessary funds, constructs the school building. The Authority, to pay the maturing bonds, enters into a "lease agreement" with a town or school administrative unit under the terms of which the town, or unit, pays rent. 20 M.R.S.A. § 3502 expressly provides that the revenue bonds of the Authority are "payable from rentals." The important point, as it bears on the issues of this case, is that section 3502 requires the Authority, on final payment of the revenue bonds, "to convey them [public school buildings] to the lessee towns or other administrative units."

The record clearly demonstrates that the Town entered into a "Lease Agreement" with the Authority, approved in a duly held town meeting. Whether the meeting so acting was held in 1970 (as the record indicates) or at some prior date is not vital since the deed to the Authority pre-dated this meeting. The end result is that the Town, after paying rentals to the Authority for such period of time as it takes to liquidate the Authority's revenue bonds, becomes entitled to a deed back to it of the premises conveyed in 1959. The Town will then receive title to the land in question, subject to the same restriction that it placed thereon originally; namely, that it

---

4. "No city or town shall hereafter create any debt or liability, which singly, or in the aggregate with previous debts or liabilities, shall exceed seven and one-half per cent of the last regular valuation of said city or town . . . .. Long term rental agreements not exceeding forty years under contracts with the Maine School Building Authority shall not be debts or liabilities within the provisions of this section." M.R.S.A.Const. art. IX, § 15.

is "subject to rights of the public to use the same as a public street." The Authority, obviously, could deed back to the Town no better title than it received. Thus it is apparent to us that the Town, in approving the "Lease Agreement," recognized and accepted the limitations and conditions placed on this property by the Gartleys.

■ The Authority argues that, because it has pledged this land as security for the bonds, the rights of the holders thereof might be impaired or diminished if the land is deemed to be a public street. Suffice it to say that the Authority could pledge no more than it owned by virtue of the deed from the Town; namely, a parcel of land burdened with an easement for public use as a street. If the rights of bond holders were "impaired," this occurred when they bought the securities, and they are in no poorer position now than they were then.

■ Because the Town, on March 14, 1970, nearly eleven years *after* it authorized the conveyance to the Authority, and, at the least, seventeen days *after* it voted to enter into the "Lease Agreement" with the Authority, voted, for the first time, to postpone "indefinitely" acceptance of the disputed premises as a public street, it is argued that this was a non-acceptance of the dedication as a public way. The simple answer to this argument is this: On March 14, 1970, the 50′ x 428′ strip was, in fact, a public street, already dedicated and accepted as such. The only remedy then available to the Town was to vote to discontinue it as a street following the procedures set forth in 23 M.R.S.A. § 3004,[5] which was never done.

## CONCLUSION

The complaint requests relief in three ways:

1) To order the Town to improve "said strip" to the standards necessary for street acceptance.

2) When so improved, to order its formal acceptance as a public street.

3) To grant "any other relief to which he may be entitled."

The Town demanded no relief, but the Authority demanded "judgment that the Court not order the . . . Town to accept [its land] as a public street."

Because we have held that the area in dispute is, in fact, a public street, already dedicated and accepted as such, the relief requested by the Authority, or the first two prayers of the plaintiff, cannot be granted. However, the stipulation signed by all parties reported the action under Rule 72(b) "for such final decision as the rights of the parties may require." The real issue, as we have said, is the *status* of the disputed parcel of land; namely, is it, or is it not, a public street? We, therefore, treat the issue before us as if the parties had joined in a petition for declaratory judgment pursuant to 14 M.R.S.A. § 5953, which provides:

"Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect. Such declarations shall have the force and effect of a final judgment or decree."

The only "other relief" to which the plaintiff is entitled and the only proper "final decision" left open to us is a declaratory judgment in the following terms:

The second parcel of land described in Paragraph Two (2) of the plaintiff's complaint is a properly dedicated and duly accepted public way in the Town of Lisbon, having equal status with all oth-

---

5. "A town, at a meeting called by warrant containing an article for the purpose, may discontinue a town or private way

. . . .. The municipal officers shall estimate the damages suffered by any person thereby."

er public ways under the jurisdiction of said Town.

The entry is:

Remanded to the docket of the Court below for entry therein of the declaratory judgment above set forth.

All Justices concurring.