STATE of Maine and the Board of Environmental Protection and Joseph E. Brennan, Attorney General of the State of Maine

v.

Melvin W. BECK.

MANCHESTER HEIGHTS
CONDOMINIUMS
ASSOCIATES

v.

INHABITANTS OF the TOWN OF
MANCHESTER.

Supreme Judicial Court of Maine.

Aug. 8, 1978.

H. Cabanne Howard (orally), Asst. Atty. Gen., Natural Resources Section, Augusta, for plaintiff.

Marden, Dubord, Bernier & Chandler by Albert L. Bernier (orally), Waterville, for Melvin W. Beck.

Locke, Campbell & Chapman by Frank Chapman (orally), Augusta, for Town of Manchester.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

Melvin W. Beck has appealed from an order enjoining him from refusing to construct a sewer line linking the Manchester Heights Condominiums Associates (Condominiums) with the sewer collection system of the Town of Manchester (Town). The injunction was sought by the State in an action pursuant to 38 M.R.S.A. § 454 (repealed P.L. 1977, ch. 300, § 27, now 38 M.R.S.A. § 451), to enjoin violation of an order of the Department of Environmental Protection (D.E.P.), issued pursuant to the Minimum Lot Size Law, 12 M.R.S.A. § 4807 et seq. The injunction was granted following a hearing before a Justice of the Superior Court in which it was also ruled that the Town was not liable, as a Third-Party Defendant, for the cost of compliance with the order. Beck appeals from both the injunctive order and the denial of his Third-Party claim.

We deny the appeal.

## FACTS

In February, 1973, Mr. Beck was preparing to construct a condominium complex. The D.E.P. then granted him a waiver of the requirements of the existing Minimum Lot Size statute,[1] thus allowing construction of the condominiums to begin. The waiver allowed the use of septic sewage disposal only temporarily, subject to the condition that "[u]pon *availability* of public sewers the condominiums shall immediately connected thereto and the underground septic system discontinued." (emphasis supplied)

In September, 1976, the Manchester Sanitary District completed construction of a public sewer to "Manhole Station 7 + 80", which was located near the condominiums, at the intersection of two streets, Kenniston Street and Tanning Brook Road. Appellant was notified of the availability of this sewer line on October 12, 1976, but he did not connect the condominium sewer line thereto. On January 17, 1977, the Attorney General brought this action to enforce the D.E. P.'s order.

Appellant answered by alleging that his failure to comply with the D.E.P. order resulted from the Town's failure to construct the public sewer line to the edge of the Condominiums' property, at the intersection of Kenniston Street and Tanning Brook. As it appears on the plot plan for the Condominiums, Kenniston Street intersects Tanning Brook about 160 feet from the intersection of Kenniston Street and Tanning Brook Road. Appellant alleged that the Town had a contractual obligation to build the sewer line as far as the brook; accordingly, he filed a Third-Party complaint against the Town to test the scope and effect of an alleged agreement between him and the Town.

The basis of appellant's complaint was a document entitled "Agreement," signed by appellant and the officers of the Town Planning Board on May 23, 1973 (hereinafter referred to as "The Agreement"). Al-

---

1. *See* P.L. 1969, ch. 365, § 1, as amended by P.L. 1971, ch. 532, § 4, now 12 M.R.S.A. § 4807 et seq.

though it purported to be an agreement between the Town and Mr. Beck, the document was not signed by the Selectmen of the Town. "The Agreement" stated in its preamble that neither "the proposed sewer line," nor "the present roadway which connects the end of the Town of Manchester approved road known as Kenniston Street with said condominium development" were complete at the time. It then provided that the Town would approve the development, and that appellant would assign an insurance policy to the Town as security for his performance of the following obligations:

    (a) "In the event that the proposed Manchester Public Lateral Sewer Collection System is installed *at the end of the existing portion of Kenniston Street that has been accepted as a Town way* within five years . . . Beck will design and construct a lateral sewer to connect [the] condominium development to [the] system." (emphasis supplied)

    (b) ". . . Beck will design and construct within two years . . . a road to connect [the] condominium development with the existing Town way portion of Kenniston."

    (c) If Beck fails to perform these two obligations the cash proceeds of the policy will be used by the Town to "satisfy the requirements" of his obligation to construct the road and sewer line.

The Agreement includes the following annexed statement, signed only by appellant: "I hereby agree to extend the time limit from 3 years to 5 years to be connected to public sewer at property line." Nothing in the original writing specified the lateral extent of the "Town Way portion of Kenniston Street."

The Town, in its answer to the Third-Party complaint, denied that The Agreement was a contract, claiming that it was a "permit or approval" of the Condominiums' plans. It also denied that the amendment, or annexed statement, altered its terms in any way except to extend the time limit on the assignment of the insurance policy, which originally was limited to three years, to conform with the time limits in The Agreement. The Town claimed that the sewer had been constructed to the spot contemplated by it and appellant. The Justice below accepted both of these arguments.

On June 15, 1977, judgment was entered in favor of the State and the Third-Party defendant Town. The Court ordered appellant to construct a sewer line to the existing manhole at the intersection of Kenniston Street and Tanning Brook Road, to be completed by August 15, 1977. On July 25th the Court denied appellant's motion to suspend the injunction pending appeal.

Appellant now asserts that the Court granted the injunction on clearly insufficient evidence. He also contends that the Court erred in finding that the Town had no contractual liability and in finding that the amendment to the agreement did not reflect the Town's intention to build the sewer to the Condominiums' property line. He argues that the Court should have treated the agreement as a contract, and declared the rights and liabilities of the parties thereunder.

### I

The appellant's challenge to the sufficiency of the State's evidence in support of its prayer for injunctive relief is without merit. The waiver allowing temporary use of septic disposal was terminable upon the "availability" of a public sewer. Mr. Beck knew of the plan to terminate the public sewer at Station 7 + 80 since his own condominiums sewer disposal plan so indicates. The line was available for connection at Station 7 + 80. The fact that additional property rights might have to be acquired to make the necessary sewer line connection does not defeat the D.E.P.'s right in the exercise of its statutory discretion to mandate this condition. *In Re Ryerson Hill Solid Waste, Etc.*, Me., 379 A.2d 384 (1977); *In Re Belgrade Shores, Inc.*, Me., 371 A.2d 413 (1977). There was no evidence that such rights, if any, could not be acquired.

### II

As for the Third-Party complaint, even *assuming* that the Town was obligated to

the appellant under the terms of The Agreement, the evidence does not show that the Town has breached that obligation. As previously noted, the document explicitly stated in its preamble that Kenniston Street did not extend to the condominiums as "an approved Town Way." The approval of the construction of the condominiums was on the condition that appellant build the road and sewer to the end of the portion of Kenniston Street which the Town had accepted as a town way "within five years" of the date thereof, but The Agreement did not state precisely where that point would be located. If the parties had agreed upon such a point, they could have readily so specified; there would have been no need to leave the exact location undetermined. The language used contradicts that of the "amendment" signed only by appellant, which supposedly expressed an agreed intention that the Town should build to his property line. The original phraseology reflects an understanding that the end of the accepted town way was to be determined in the future, presumably when the Town's sewage collection system has been constructed. There is no evidence that the Town expressly agreed to the wording in the "amendment," or otherwise expressed any intent to build to the Condominiums' property line.

The trial Court ruled that because the "amendment" was only for the purpose of extending the time limit of the assignment, the Town can only be deemed to have accepted it for this purpose, absent any evidence to the contrary. There are no facts in the record on which we could predicate a reason for finding this ruling erroneous.

If the Town had in fact accepted the portion of Kenniston Street between Tanning Brook Road and Tanning Brook as a town way before this action was taken, appellant would be in a position to argue that he was not obligated to build the sewer beyond Tanning Brook. The record does not show however, how much of Kenniston Street had been accepted.

A public way can be established by any of three recognized methods: by prescriptive use,[2] by the statutory method of laying out and accepting a way,[3] or by dedication and acceptance. *Vachon v. Inhabitants of Town of Lisbon*, Me., 295 A.2d 255, 259 (1972). Beck, as Third-Party plaintiff, failed to demonstrate that the disputed portion had been established as a town way by any of these methods.

There was some testimony that the road had been plowed and publicly used, but the establishment of a town way by prescription minimally requires at least twenty years of continuous use. *MacKenna v. Inhabitants of the Town of Searsmont*, Me., 349 A.2d 760, 762 n. 3 (1976); 14 M.R.S.A. § 812. There was no evidence that Kenniston Street had even been in use for that length of time.

If the street has been officially laid out and accepted according to the statutory provision, this could have been established from the official records of the Town. Under both the present statutory provisions, and their predecessors (which were in effect until 1975), the municipality can only accept a town way by following prescribed statutory procedures and recording the same in the Registry of Deeds. 23 M.R.S.A. § 3021 et seq. *See* 23 M.R.S.A. § 3001–03, repealed by P.L. 1975, ch. 711, § 7. Appellant did not produce any record of municipal action covering the period in issue. The custodian of the Town's records attended the trial but he was never called to testify. The only official who testified was a former Chairman of the Planning Board and the Sanitary District, who indicated that he was not sure where the end of the accepted portion of Kenniston Street was, but that he believed it to be in the same place as the sewer outlet.

In conclusion, the evidence is insufficient to establish a breach of the asserted duty

---

**2.** 23 M.R.S.A. § 3030, 14 M.R.S.A. § 812.

**3.** 23 M.R.S.A. § 3021, et seq., *formerly* 23 M.R.S.A. § 3001, et seq. (See P.L. 1975, ch. 711, §§ 7, 8).

owed by the Town to appellant.[4] There is, therefore, no basis for altering the ruling that the Town was under no liability to appellant.

The entry is:

Appeal denied.

Judgment affirmed.

---

4. Because it accepted the assignment of Beck's insurance policy and subsequently took steps to collect the proceeds of that policy, the Town might be said to have ratified the agreement between Beck and the Planning Board. In issuing the injunction against Beck, the trial Justice explicitly assumed that those funds would be returned to Beck if he complied with the injunction and completed the sewer. Any subsequent liability of the Town for return of those funds is not at issue here.