NORTHPORT WESLEYAN GROVE CAMPMEETING ASSOCIATION

*vs.*

HENRY H. ANDREWS.

Waldo.    Opinion September 10, 1908.

*Public Park.    Dedication.    Trespass.    Revised Statutes, chapter 4, section 93, paragraph VI.*

Dedication is the intentional appropriation of land by the owner to some proper public use, reserving to himself no rights therein inconsistent with the full exercise and enjoyment of such use. The intention to dedicate is the essential principle, and whenever that intention on the part of the owner of the soil exists in fact and is clearly manifest either by his words or acts, the dedication, so far as he is concerned, is made. If accepted and used by the public for the purpose intended it becomes complete, and the owner of the soil is precluded from asserting any ownership therein that is not entirely consistent with the use for which it was dedicated.

The doctrine of dedication is applicable to public parks and squares, and the fact of dedication may be established in the same manner as in the case of dedication of streets and highways.

The word "park" written upon a block on a map of real estate indicates a public use; and when the owner of such real estate makes conveyances of portions thereof by express reference to such map, such acts on the part of the owner if unexplained operate as a dedication to the public use of the block so marked.

A park may be defined as a piece of ground set apart to be used by the public as a place for rest, recreation, amusement and enjoyment. The full use and benefit of a park is not realized by the enjoyment only of an open view and the right of passage upon it. The right to enjoy the pleasures and advantages that beauty and ornamentation can afford is also included in the uses and purposes of a public park.

The plaintiff, in 1876, purchased a tract of land for an addition to its campground at Northport and caused the same to be laid out into lots for lease or sale with an open space of about one acre for a park. A plan of the tract and the laying out was made on which the lots were designated by numbers and the open space or park marked "Bay View Park." Lots were at first leased "in perpetuam" and later others conveyed in fee, by express reference to said plan. The defendant is the owner of four and one-half lots adjoining said "Bay View Park." The defendant cut certain grass standing and growing in said "Bay View Park," contending that this was done by him as one of the public, and an adjoining lot owner, for the purpose only of beautifying and improving the said park. The plaintiff then brought an action of trespass quare clausum against the defendant. On the facts, which are stated in the opinion, *Held:* (1) That there was a dedication of the locus by the plaintiff to the use of the public and the adjoining lot owners as a park. (2) That by its dedication of the locus as a park the plaintiff gave up and surrendered its right to exercise any acts of control or possession of it that would hinder the public in the full enjoyment of it as a place of rest, of recreation, of amusement and enjoyment, or that would prevent the public from increasing those enjoyments by its adornment and ornamentation. (3) That the defendant as one of the public, and an adjoining lot owner, had a right to cut the grass as he did, for the sole purpose of improving the park, and that he was not a trespasser in so doing.

On report.     Judgment for defendant.

Trespass quare clausum to recover damages for cutting and trampling down grass on a lot of land in Northport, known as "Bay View Park." Plea, the general issue, with brief statement as follows:

"That the land described in plaintiff's writ, on which it is alleged that the trespass was committed by the defendant, was dedicated to the use of the public and the adjoining lot owners by the plaintiff as a park long before the date of the alleged trespass and had been improved, graded, fertilized and sown to grass by the adjoining lot owners; and that the defendant, as one of the adjoining lot owners, had a legal right to enter upon said land and cut the grass thereon for the purpose of improving and beautifying said park and keep-

ing it in proper condition for use for the purposes for which it was designed and had been dedicated; and that the defendant, in the exercise of his legal right and by request of other adjoining lot owners, entered upon said land at the time alleged in the writ, and mowed the grass thereon, for the purpose only of benefiting and improving said park, and did not injure said park or damage the plaintiff."

Tried at the April term, 1908, Supreme Judicial Court, Waldo County. At the conclusion of the evidence and by agreement of the parties the case was reported to the Law Court for determination upon the legally admissible evidence.

The case appears in the opinion.

*William P. Thompson,* for plaintiff.

*Dunton & Morse,* for defendant.

SITTING: EMERY, C. J., SAVAGE, PEABODY, CORNISH, KING, BIRD, JJ.

KING, J. On report. Action of trespass quare clausum to recover damages for cutting and trampling down the grass on a lot of land in Northport, Maine. The defendant justifies under a claim that the locus had been dedicated by the plaintiff to the use of the public and the adjoining lot owners as a park, and that the acts complained of were done by him as one of the public, and an adjoining lot owner, and at the request of other adjoining lot owners, for the purpose only of beautifying and improving said park and rendering it more suitable for the use for which it was dedicated.

In 1876, the plaintiff purchased a tract of land for an addition to its campground at Northport and caused the same to be laid out into lots for lease or sale with an open space of about one acre for a park.

A plan of the tract and the laying out was made on which the lots were designated by numbers and the open space or park marked "Bay View Park." Lots were at first leased "in perpetuam," and later others conveyed in fee, by express reference to said plan. The defendant is the owner of four and one-half lots adjoining said "Bay View Park." The only instrument put in evidence, showing title of

any of the lots in defendant, is dated May 18, 1881, wherein the plaintiff leases to the defendant "in perpetuam . . . . A certain lot on their campground numbered according to the plan made by R. B. Miller of said lots, and bounded as follows:   Beginning on the easterly side of "Bay View Park" at the northerly corner of lot No. 314; thence southerly by said Lot and on "Bay View Park" twenty-five feet to a vacant Lot; thence easterly on said vacant Lot fifty feet to a stake & stones; thence northerly by lot 314 twenty-five feet to a vacant lot; thence westerly on said vacant Lot fifty feet to the place of beginning.   Intending hereby to convey to said Andrews Lot No. 314 as per said plan."

There is no material conflict of testimony as to the original laying out of the space for a park and its subsequent use as such by the lot owners and the public generally, from which testimony it satisfactorily appears:   That at the time of the conveyance of lot 314 to defendant the treasurer of the plaintiff, Mr. Ruggles, who was authorized to make the conveyance, exhibited to him said plan and promised that the park designated thereon was to be graded and kept open as a park; that after several years, nothing material having been done to improve the park, the defendant raised among the lot owners one hundred dollars or more, to which the plaintiff added twenty-five dollars, and this money was expended by the defendant in grading, fertilizing and seeding to grass the park; that the lot owners, and the public generally, have used the park since it was laid out for crossing and recrossing it, and as they pleased.   The circumstances leading up to the alleged acts of trespass, and explanatory of those acts, are thus stated by defendant: "I seeded it down and kept seeding it down, as I say, on the clay, and putting on year after year a good deal of fertilizer.   But Mr. Dickey (the superintendent at time of acts complained of) claimed the grass.   He didn't put anything on as I say for several years but claimed the grass and I was away from home a good deal and when I would get home the first of July, sometimes away along into July, perhaps the 8th or 10th, that grass wouldn't be cut.   And when it was cut, growing so stout, especially on that clay, it left it nothing but stubble, and it would take me all the season to mow it

and trim it and work on it to bring it in to make a decent grass plot of it. I worked upon it the rest of the season every year to try to make it look decent, but I urged him, and the others in authority, to have it cut early, but I couldn't get that cut. They did come over on Ruggles' part earlier, but our part it was almost impossible to get it cut before July, and as I say before, it always looked rough and coarse. He kept cutting it and I urged him or tried to reason with him to let us have it to beautify and fertilize at our own expense and cut frequently, and the rest of the lot owners went to the Association — went to the officers and urged them to let us have it to care for at our own expense. But he was determined not to give it up to us, and I couldn't do anything with him. At last I made up my mind that I would cut it and see what they could do with me."

Mr. Dickey testified that he had made an arrangement with the Association whereby he was to have the hay on the park in consideration for certain work he did on the rest of the grounds and trucking, and that there was an understanding that it should be cut twice each year.

The defendant cut the grass on the 18th day of June 1907, and notified Mr. Dickey that he had done so. "And I told him that I didn't care for the grass, that was not what I was after and that he might take it off, and that if he didn't take it off I would." This action was immediately commenced.

Was there a dedication by the plaintiff of the locus to the use of the public and the lot owners as a park? We think there was.

Dedication is the intentional appropriation of land by the owner to some proper public use, reserving to himself no rights therein inconsistent with the full exercise and enjoyment of such use. The intention to dedicate is the essential principle, and whenever that intention on the part of the owner of the soil exists in fact and is clearly manifest, either by his words or facts, the dedication, so far as he is concerned, is made. If accepted and used by the public for the purpose intended it becomes complete, and the owner of the soil is precluded from asserting any ownership therein that is not entirely consistent with the use for which it was dedicated.

Judicial decisions explanatory of the principles upon which the doctrine of dedication rests have so multiplied, and are so uniform in reasoning, that but few citations need here be made.

Prof. Dillon says: (Dill. Mu. Corp. 4th Ed. 630) "the subject may be advantageously presented by referring to the leading case of the *City of Cincinnati* v. *White*, 6 Pet. 431, 10 U. S. 179, decided by the Supreme Court of the United States, which has been extensively followed by the state tribunals, and is everywhere recognized as a sound exposition of the peculiar doctrines of the law respecting the rights which may be parted with by the owner and acquired by the public under the doctrine of dedication. . . . . In its opinion in the case just mentioned, the Supreme Court assert or assent to the following principles: 1. That it is not essential to a dedication that the legal title should pass from the owner.  2. Nor is it essential that there should be any grantee of the use or easement in esse to take the fee, such cases being exceptions to the general rule requiring a grantee.  3. Nor is a deed or writing necessary to constitute a valid dedication; it may be by parol.  4. No specific length of possession is necessary to constitute a valid dedication; all that is required is the assent of the owner of the soil to the public use, and the actual enjoyment by the public of the use for such a length of time that the public accommodation and private rights would be materially affected by a denial or interruption of the enjoyment."

In that case, *Cincinnati* v. *White*, the question discussed was the dedication of a public park. It is said: "And after being thus set apart for public use, and enjoyed as such, and private and individual rights acquired with reference to it, the law considers it in the nature of an estoppel in pais, which precludes the original owner from revoking such dedication. It is a violation of good faith to the public and to those who have acquired private property with a view to the enjoyment of the use thus publicly granted."

The following are a few of the cases in which the same principles have been clearly announced:

*Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 411; *Village of Mankato* v. *Willard*, 13 Minn. 1, s. c. 97, Am. Dec. 208; *People*

v. *Marin County*, 103 Cal. 223; *Bates* v. *City of Beloit*, 103 Wis. 90; *Palen* v. *Ocean City*, 64 N. J. Law 669; *Wood* v. *Hurd*, 34 N. J. Law (5 Vroom) 87, 88; *Abbott* v. *Cottage City*, 143 Mass. 521; *Attorney General* v. *Abbott*, 154 Mass. 323, 328; 2 Dill. Mu. Corp. (4th Ed.) 630, et seq; Cyc. Vol. 13, pages 448, 453, 455; *Bartlett* v. *Bangor*, 67 Maine, 460; *Heselton* v. *Harmon*, 80 Maine, 326; *City of Indianapolis* v. *Kingsbury*, 101 Ind. 200.

The doctrine of dedication is applicable to public parks and squares, and the fact of dedication may be established in the same manner as in the case of streets and highways. Dill. Mu. Corp. (4th Ed.) 644, and notes; *Rhodes* v. *Town of Brightwood*, 145 Ind. 21; *Abbott* v. *Cottage City*, 143 Mass. 521, 523, and cases there collected.

"Where the word 'public square' are used on a plat, that is an unrestricted dedication to public use." Dill. Mu. Corp. (4th Ed.) 645. And the same author adds: "The word 'park' written upon a block on a map of city property, indicates a public use; and conveyances made by the owners of the platted land by reference to such map operate conclusively as a dedication of the block."

In *Abbott* v. *Mills*, 3 Vt. 526, it is said; "Whenever a public square or common is marked out or set apart by the owner, and individuals are induced to purchase lots of land bordering thereon, in the expectation held out by the proprietors that it should so remain, or even if there are no marks upon the ground, but a map or plan is made, and lots marked thereon and sold as such, it is not competent for the proprietors to disappoint the expectations of the purchasers by resuming the lands thus set apart, and appropriating them to any other use."

Our own court has adopted and applied the same principles. In *Bartlett* v. *Bangor*, 67 Maine, 460, 464, WALTON, J., delivering the opinion of the court said: "When the owner of land within or near to a growing village or city divides it into streets and building lots, and makes a plan of the land thus divided, and then sells one or more of the lots, by reference to the plan, he thereby annexes to each lot sold a right of way in the streets, which neither he nor his successors in title can afterwards interrupt or destroy."

Applying these principles in the case now under consideration we find all the essential elements of a complete dedication of the locus by the plaintiff to the use of the public and the adjoining lot owners for a park established by the evidence.   Here was a dividing of a tract of land bordering on the seashore into small lots for sale, the setting apart of a portion of the tract for a park, the representation of the platting by a plan showing the lots by numbers and the locus as "Bay View Park," the exhibition of the plan to purchasers, the selling of lots by express reference to the plan, the promise that the park should be graded and kept open as such, and its use by the lot owners and the public generally at their pleasure continuously for a long period of years during which they have improved and beautified it at their own expense.

An intention on the part of the plaintiff to dedicate the locus to the public use as a park was thus clearly manifested by its acts and statements explanatory of those acts.   Upon that intention so expressed the public and individual citizens had a right to act, and did act, purchasing lots with the assurance that they were to have the full benefit and enjoyment of the locus as a public park, and entering upon and using the same for such purpose.   The conclusion therefore must be that a complete dedication has resulted.

We think such dedication affords the defendant a justification of his acts complained of.

It is true that the fee of the soil remains in the plaintiff, for a common law dedication does not pass the fee; but by the dedication the plaintiff is estopped from exercising any use and control of the locus inconsistent with the full use, benefit and enjoyment of it by the public as a park.   The plaintiff's limitations as to its use and control of the locus must therefore be considered and determined with reference to the use for which it was dedicated — a park.   In order to carry into effect such intended use a more enlarged right of control in the public may be required, with a consequently diminished right in the plaintiff, than in the case of some other public uses, such as highways and streets.

A park may be defined as a piece of ground set apart to be used by the public as a place for rest, recreation, exercise, pleasure,

amusement and enjoyment. See cases collected under "Words and Phrases," vol. 6, page 5176, title "Park." The full use and benefit of a park is not realized by the enjoyment only of an open view and the right of passage upon it. The right to enjoy the pleasures and advantages that beauty and ornamentation may afford is also included in the uses and purposes of a public park.

Accordingly by its dedication of the locus as a park the plaintiff gave up and surrendered its rights to exercise any acts of control or possession of it that would hinder the public in the full enjoyment of it as a place of rest, of recreation, of amusement and enjoyment, or that would prevent the public from increasing those enjoyments by its adornment and ornamentation.

To maintain this action of trespass quare clausum the plaintiff must show that notwithstanding the dedication it still retained the possession and control of the locus sufficiently to have the grass growing thereon remain uncut until it ripened into hay, or at least until it saw fit to cut it. If such possession and control by the plaintiff would interfere with the full enjoyment by the public of the use of the locus as a park then it follows that the plaintiff had not such right of possession and control. Whether or not the grass growing upon this park, if left uncut until it ripened into hay, or late in the season, would lessen the benefits and enjoyments which the public could derive from the park is a question of fact. We think it would; and that the park would be made more suitable for use, and afford more pleasure and enjoyment to those entitled to its use, if the grass were cut earlier and oftener. It must afford less pleasure to travel through tall grass, especially when wet by dews and fogs, than to walk over a closely cut surface; so, too, the coarse and seared stubble of a late cutting is less attractive to the eye than the green of a well kept lawn.

The municipal authorities might have exercised control over the park and improved it, but they did not. The individual citizens interested in it and entitled to its enjoyment had the right to do that which was reasonably necessary to improve the park and render it more suitable for the uses for which it was intended. *Attorney Gen-*

*eral.* v. *Abbott*, 154 Mass., page 327, 328 ; *Heselton* v. *Harmon*, 80 Maine, 326.

. The acts of defendant in cutting the grass were done only for the purpose of improving the park, and in the opinion of the court so resulted.

It would hardly be contended that defendant could be held in trespass for raking dangerous rocks from footpaths over the park, or removing unsightly underbrush, or even cutting and destroying weeds and thistles growing thereon. Wherein is there a distinction in principle between such cases and the one at bar ? We think the defendant, as one of the public, and an adjoining lot owner, had a right to cut the grass as he did, for the sole purpose of improving the park, and that he was not a trespasser in so doing.

It is suggested that inconveniences may result by reason of some possible conflict in the ideas of those interested in the park as to what acts would improve and benefit it. That is possible, but not probable. As before mentioned the municipal authorities may take charge of it under authority to make by-laws and ordinances "for the proper protection and care of public parks and squares." R. S., c. 4, § 93, par. VI. If any one does that which will render the locus less suitable or useful as a park, or unlawfully interrupts the rightful enjoyment of it by others, he may be restrained ; and it is not probable that rivalry for its improvement in fact will exist to the extent of inconvenience.

It follows that this action is not maintained, and the entry will be,

*Judgment for defendant.*