JOSEPH C. JACKSON AND NANCY L. JACKSON, APPELLANTS, v. HENRY H. HICKS AND MARJORIE M. HICKS, RESPONDENTS.

No. 11330

December 11, 1979 604 P.2d 105

*Robert F. Butler,* of Reno, for Appellants.

*Cooke, Roberts & Reese,* of Reno, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

The Jacksons commenced this action to have the district court declare that they had acquired a prescriptive easement over a twenty-foot strip of land owned by Henry and Marjorie Hicks. Contrary to their claims, the court found that their use of the strip of land was permissive, rather than hostile and adverse. Consequently, judgment was entered for the Hickses. This appeal challenges the propriety of that decision.

The Hickses and Jacksons own adjoining property as reflected on the diagram below.[1] The twenty-foot strip of land

---

[1]

between lots 17 and 19 connects the Hicks property to Hunter Lake Drive and is the only ingress to and egress from that homesite. That strip is owned by the Hickses. The Jacksons own parcels 16 and 17. Parcel 16 is a vacant lot. The Jackson home, garage and horse stables are on parcel 17.

The Hicks home was built about 1960 by their predecessor in interest, the McKennas, who insisted that the conveyance to them include the twenty-foot strip of land from their homesite to Hunter Lake Drive. Shirley McKenna, now Shirley Rae, resided there until she sold the property to the Hickses in 1974.

The Jackson home was constructed in 1962 by Ben Wynn. Since parcel 17 was too narrow to allow a driveway along the side of the house, a circular drive was placed in front. In 1965 Wynn sold the property to Riley Kirkendahl. Kirkendahl wished to build a garage behind the house and received permission from the McKennas to use their driveway until he could purchase parcel 16 and provide another access. Kirkendahl's interest in parcel 17 was foreclosed shortly thereafter, and other persons rented the property until it was sold to the Jacksons in 1970. Each predecessor in interest occasionally used the driveway for ingress to and egress from the garage without seeking permission from the McKennas.

After the Jacksons acquired parcel 17 in 1970, the use of the driveway increased. They added a barn and corral to their backyard. In 1972 the Jacksons purchased parcel 16 which is four to six feet higher than parcel 17, and converted it to pasture.

When the Hickses purchased parcel 18 in 1974, they notified the Jacksons by letter of their (the Hickses) ownership of the driveway, that the Jacksons' use thereof was permissive, that the Hickses intended to pave the driveway, and suggested that the Jacksons provide their own driveway. At the same time the Hickses placed a sign, "Private Property, Permission to Pass May be Revoked at Any Time," at the entrance to the driveway on Hunter Lake Drive. In 1976, the attorney for the Hickses notified the Jacksons by letter of the Hickses' intention to fence the land along their property line. In 1977 the Jacksons were notified that their permission to use the driveway was revoked. This litigation ensued.

It is the appellate contention of the Jacksons that the evidence received does not support the finding of the trial court that their use of the driveway was permissive rather than adverse. We turn to examine this contention.

An easement by prescription may be created through five years adverse, continuous, open and peaceable use. Dean v. Pollard, 93 Nev. 105, 560 P.2d 911 (1977); Richardson v. Brennan, 92 Nev. 236, 548 P.2d 1370 (1976); Stix v. LaRue, 78 Nev. 9, 368 P.2d 167 (1962); Howard v. Wright, 38 Nev. 25, 143 P. 1184 (1914). Whether the use is with permission or is adverse presents an issue of fact. Turrillas v. Quilici, 72 Nev. 289, 303 P.2d 1002 (1956). Upon review following a full trial, we are to consider the evidence in a light most favorable to the respondents for whom the trial court entered judgment.

When the Jacksons added a barn and corral to their backyard on parcel 16, they also improved the twenty-foot roadway. It is their contention that their maintenance and improvement of the roadway established a clear shift from a permissive use to an adverse use. It was within the province of the trial court to rule otherwise.

Here, as in *Howard* and *Turrillas,* the owners of the servient estate (the Hickses) established the way for their own use, and there was another way available to the dominant estate. In such circumstances, the use of the way by a neighbor for a long period of time does not create a presumption of adverse use, *Howard,* and does create a presumption of permissive use, *Turrillas.* Cf. Stix v. LaRue, supra. The following quotation from *Turrillas* is apropos:

> Where a roadway is established or maintained by a landowner for his own use, the fact that his neighbor also makes use of it, under circumstances which in no way interfere with use by the landowner himself, does not create a presumption of adverseness. The presumption is that the neighbor's use is not adverse but is permissive and the result of neighborly accommodation on the part of the landowner.

This presumption was not rebutted. Maintenance and improvement of a portion of the way does not evidence adversity. *Howard.* The Jacksons admit that they did not notify McKenna of an adverse claim. McKenna testified that no one used the driveway without her permission. When the Hickses purchased the property in 1974 they advised the Jacksons that their use of the way was permissive. Thus, it is apparent that

the presumption of a permissive use was corroborated by the evidence received.

Affirmed.

MOWBRAY, C. J., and GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.