**TOWN OF MANCHESTER, et al.**

v.

**AUGUSTA COUNTRY CLUB et al.**

Supreme Judicial Court of Maine.

Argued Sept. 22, 1983.*

Decided May 23, 1984.

---

* This case was originally argued March 14, 1983 before a different court. Thereafter, supple-  mental briefs were ordered and the case set for reargument.

Sanborn, Moreshead, Schade & Dawson, Lee K. Bragg (orally), Augusta, for plaintiffs.

James E. Tierney, Atty. Gen., Paul Stern, Asst. Atty. Gen., Augusta, for amicus curiae.

Locke, Campbell & Chapman, Joseph Campbell (orally), Augusta, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

ROBERTS, Justice.

The plaintiffs [1] claim that the general public has acquired the right to use a right-of-way and a beach on land of the defendants along the northern shore of Lake Cobbosseecontee. In addition, the Town of Manchester alleges that the defendants are estopped to deny that the town holds such an easement in trust for the general public. The plaintiffs appeal from a judgment of the Superior Court, Kennebec County, in favor of the Augusta Country Club and the Augusta Golf Company. Because the evi-

---

1. The original complaint, filed July 10, 1981, together with motions for a preliminary injunction and temporary restraining order, alleged that plaintiffs John P. Daggett, Michael B. Jackson and John Babb were "residents of the Town of Manchester ... duly elected selectmen and representatives of the Inhabitants thereof." The amended complaint filed April 9, 1982, described the plaintiffs as "the Inhabitants of Manchester and the duly elected Selectmen thereof, who are also acting as representatives of the public at large." John P. Daggett, Michael B. Jackson and William Flanders are also described in the amended complaint as citizens, domiciliaries, voters and property owners of Manchester" as well as users of the beach and right-of-way. Motions to substitute Flanders for Babb and to add Mabel Nevins "as an individual Plaintiff" were granted on June 17, 1982.

dence supports the decision of the Superior Court and because the right of the plaintiffs to trial by jury, if indeed they had such a right, was not preserved, we affirm the judgment.

## I.

The evidence, viewed in the light most favorable to the defendants, would warrant the following conclusions. Lake Cobbosseecontee is an oblong body of water whose northernmost shore lies just west of the Manchester town center and south of Route 202, a main highway between Winthrop and Augusta. In 1916, one Arthur Brainard deeded a parcel of land located between Route 202 and the Lake to the Augusta Golf Company, a Maine corporation. This parcel, located in the towns of Winthrop and Manchester, formed the western portion of the property now the subject of dispute. The eastern portion, also situated between Route 202 and the Lake, but lying wholly within the borders of Manchester, was deeded to the Company by Herbert Hammond in 1917. Together these parcels are occupied by the Augusta Country Club, a Maine corporation and a tenant at will of the Augusta Golf Company.

Where the two properties would otherwise converge along the lake shore there is a small, trapezoidal parcel of land conveyed by Brainard to John Gould in 1903. The deed to Gould also conveyed a right-of-way running south from Route 202, along the Manchester-Winthrop town line, to a sand beach adjacent to and westward of the Gould estate. This right-of-way was used to gain access to the Gould property, but was also used by members of the general

public to gain access to the beach. In 1931, the country club began construction of an additional nine holes for its golf course. This construction interfered with Gould's right-of-way, but in 1932 the Augusta Golf Company conveyed a new right-of-way to Gould, beginning well to the east of the Manchester town line and running southward and then westward to the Gould property. This easement was conveyed "subject, however, to any and all rights that the town of Manchester may have in and to said right of way."

Since 1932, members of the general public have used the beach and lake for purposes of recreation and for commercial and noncommercial ice-cutting. In 1935, the country club hired an attendant to supervise the beach and to restrict its use to club members and their guests. Nevertheless, it appears that use of the right-of-way and of the beach by the general public continued unabated. In 1957, the club began restricting access to the beach to club members and to residents of the Town of Manchester.[2] Residents were asked to present identification cards, which were provided by the town, and signs were posted along the right-of-way stating that the beach was the private property of the club. The club also installed a chain, and later a gate, across the right-of-way to prevent after-hours use of the beach.

Throughout the years, the club made numerous improvements to the beach, including the installation of a bath house. The town, on the other hand, maintained the right-of-way. At its annual meeting in 1975, the town voted to appropriate $2500 for the security and maintenance of the beach.[3] It appropriated $1000 for this pur-

---

**2.** The reason this benefit was accorded to residents of the Town of Manchester is not articulated in the record. The right-of-way is almost entirely contained within Manchester's borders, and originates at a point within the Town on Route 202. The beach, however, is entirely within the confines of Winthrop.

**3.** In testimony at the trial, Clarence Read, Jr., an official of both the golf company and country club, stated that "there was considerable

discussion and apprehension about the acceptance of such funds for fear that they might entail conditions—might jeopardize or unduly influence our control of our beach." The funds, which were unsolicited by the club, were finally accepted upon three conditions: "one, was that the funds should be disbursed at our discretion; secondly, there should be no encumbrance upon us beyond the year of their acceptance; and third, the Town Clerk issue identification cards

pose each ensuing year from 1976 to 1980. From 1960 to 1980, however, the population of Manchester had approximately doubled, and use of the beach by residents of the town increased accordingly. In a letter to the Manchester Board of Selectmen dated February 24, 1981, the club informed the town that "we reluctantly are compelled to close the beach to all but club members and their invited guests commencing with the 1981 season."

The town responded by appointing a Manchester Beach Committee, which, on May 6, 1981, submitted nine proposals to the club as a means of assuring continued access to the beach by both club members and residents of the town. On July 1, the club announced that, effective July 10, the beach would be restricted to club members and their invited guests.[4] The town, seeking to represent the interests of the general public, filed suit in the Superior Court on July 10. After a trial without jury, the Superior Court found that no rights had been acquired by the public and entered judgment for the defendants.

On appeal, the plaintiffs repeat their contention that use of the right-of-way and of the beach by the public at large has given rise to an easement for the benefit of the general public. The town also claims that the defendants are estopped by the language of the 1932 deed to Gould to deny its rights in the way. In addition, the plaintiffs claim the court erred in denying their demand for trial by jury. Our task, therefore, is to determine first, whether plaintiffs have preserved their jury claim and second, whether the evidence viewed most favorably to the defendants supports the denial of the relief plaintiffs claim.

## II.

■ The rules of civil procedure do not purport to describe the only manner by which the right of jury trial may be preserved or waived. We have previously held that unconventional procedure may produce the same result as procedural regularity. *See Smith v. Tonge*, 377 A.2d 109 (Me.1977); *Supruniuk v. Petriw*, 334 A.2d 857 (Me.1975). *Compare Maine Broadcasting Co. v. Eastern Trust & Banking Co.*, 142 Me. 220, 49 A.2d 224 (1946) (single justice lacking in jurisdiction of declaratory judgment action) *with Sowles v. Beaumier*, 227 A.2d 473 (Me.1967) (trial before single justice without demand for jury trial of legal issue). Where a plaintiff has a choice of remedies he may control the right of trial by jury *vel non*. 1 Field, McKusick & Wroth, *Maine Civil Practice* § 38.1 at 553 (2d ed. 1970). Where a plaintiff elects an equitable remedy he may forfeit any right to trial by jury of legal issues. *Matsushita Electric Corp. of America v. Sonus Corp.*, 362 Mass. 246, 284 N.E.2d 880 (1972); *McAdams v. Milk*, 332 Mass. 364, 125 N.E.2d 122 (1955). We hold, in the narrow circumstances of this case, that the plaintiffs did not seasonably demand a trial by jury.

From July 10, 1981, when the complaint was filed until the June 17, 1982 ruling denying a jury trial, the parties conducted this litigation as an equity action. On July 10, 1981, the plaintiffs sought and obtained a temporary restraining order that was later extended by agreement. All further action in this case was before the same trial judge. Count I of the complaint alleged irreparable injury and *no adequate remedy at law*, and sought declaratory and

---

to Manchester residents for their identification to allow access to the beach."

**4.** In a letter to the committee dated June 2, 1981, the club offered to postpone closing the beach to Manchester residents until the 1982 season, provided that certain conditions were met. Most of these conditions paralleled those articulated in the nine proposals made by the town committee. The Town's failure to ratify this proposed agreement resulted in the letter of

July 1. In the June 2 letter, however, the club introduced a summary of the grievances which triggered its action as follows: "[T]he Augusta Country Club beach is private land owned by the Augusta Golf Company located entirely within the Town of Winthrop, Maine. The use of the facility by Manchester residents has been by permission of the Augusta Country Club and at no time did a 'right' to such use ever accrue to Manchester or its non-member residents."

injunctive relief. Count II alleged that the action was brought pursuant to the general jurisdiction of the Superior Court to grant equitable relief and pursuant to 14 M.R.S.A. § 6651 (1980) (although there was no request that the defendants be required to commence a land action) and § 6658 (1980) (although the plaintiffs *now* argue that the land in question is cultivated). After the parties agreed to extend the restraining order, the case was set for non-jury hearing on September 17. Plaintiffs did not then demand a trial by jury pursuant to M.R.Civ.P. 38(b). The record contains nothing that explains why that hearing did not occur.

The case was next set for non-jury trial on February 26, 1982. The defendants obtained a continuance due to the absence of witnesses. Nevertheless, on February 26 counsel appeared before the trial judge who granted leave to amend count I and set a schedule for pretrial conference and trial. On March 18, 1982, counsel carried the file from Kennebec to Cumberland County for pretrial conference. Thereafter, plaintiffs filed an amended, single-count complaint once again alleging "no adequate remedy at law" and requesting declaratory and injunctive relief. Plaintiffs' trial brief, filed six days later, discusses both prescriptive rights and equitable estoppel theories of relief. Plaintiffs' second pretrial memorandum filed on June 16, 1982 again claims both prescriptive rights and equitable estoppel. The memorandum also repeats a pro-forma jury trial request: "Trial by jury is requested." [5]

On June 17, 1982, just five days before the scheduled non-jury trial, the attorneys once again traveled out of county to appear before the trial judge. At the hearing in Knox County, plaintiffs' counsel explained his claim for a jury trial by saying that the case "by tradition is one of law bringing forward legal issues." According to the

trial judge that was the first occasion upon which plaintiffs' jury demand had been brought to his attention—although the case had been scheduled for trial twice before. It is significant that by usual Superior Court practice, absent an individual assignment by the Chief Justice, only non-jury cases are retained under the control of an individual justice.

■ We also find significant the fact that the plaintiffs could not be harmed by delay because of the continuing restraint on the defendants. The trial judge was aware of the need to decide promptly this case, which had been pending almost a year. The trial judge perceived the "change of pace" by the plaintiffs' counsel as dilatory tactics. The plaintiffs sought equitable relief and based their claim, in part at least, on an equitable theory of estoppel. At no time did plaintiffs' counsel articulate clearly and concisely the exact issue upon which trial by jury was demanded. Under these circumstances, we hold that any right to jury trial the plaintiffs may have had was not preserved.

### III.

■ The doctrine that the public-at-large is capable of acquiring a non-possessory interest in land has long been accepted in Maine. *See, e.g., Inhabitants of the Town of Kennebunkport v. Forrester,* 391 A.2d 831 (Me.1978); *MacKenna v. Inhabitants of the Town of Searsmont,* 349 A.2d 760 (Me.1976); *Littlefield·v. Hubbard,* 124 Me. 299, 128 A. 285 (1925); *Littlefield v. Maxwell,* 31 Me. 134 (1850); *see also* 14 M.R.S.A. § 812 (1980) ("No person, class of persons *or the public* shall acquire a right-of-way or other easement through, in, upon or over the land of another by the adverse use and enjoyment thereof, unless it is continued uninterruptedly for 20 years")

---

**5.** Nothing contained in the memorandum indicates that the request is for other than an advisory jury pursuant to M.R.Civ.P. 39(d). The recommended form is: "The plaintiffs believe that the following issue in this action is triable of right by a jury and demand a trial by jury on such issue." 1 Field, McKusick & Wroth, *Maine Civil Practice* § 38.9 at 279 (2d ed. Supp.1981).

(emphasis added).[6] Such non-possessory interests commonly arise three ways: by the statutory method of laying out a public way or easement, pursuant to 23 M.R.S.A. § 3022; by dedication; or by prescription.[7] *See generally Vachon v. Inhabitants of the Town of Lisbon*, 295 A.2d 255, 259 (Me.1972). In the case before us, neither the facts nor the pleadings suggest the first-named method. Of the latter two, dedication contemplates the intentional creation of a non-possessory interest by the grantor, while prescription envisions the creation of an interest through adverse use by the grantee.

■ To prove dedication, two conditions must be shown: that the land in question was "dedicated" by the grantor for a public purpose; and that the public "accepted" the dedication by some affirmative act. "Dedication is an appropriation of land to some public use, made by the owner.... There must be a clear intent to so dedicate. Mere acquiescence by the owner in occasional and varying use by the public is not sufficient to establish dedication .... Acts and circumstances may rebut evidence that may indicate the owner's intention, such as ... treating the land as his own, ... maintaining a fence, etc." *Baker v. Petrin*, 148 Me. 473, 479–80, 95 A.2d 806, 810 (1953). The "affirmative act" required for acceptance has not been expressly defined, but this Court has intimated that " 'actual enjoyment by the public of the use for such a length of time that the public accommodation and private rights would be materially affected by a denial or interrup-

tion of the enjoyment' " may be sufficient. *Vachon*, 295 A.2d at 260 (quoting *Northport Wesleyan Grove Campmeeting Ass'n v. Andrews*, 104 Me. 342, 347, 71 A. 1027, 1029 (1908)).

■ Even assuming arguendo that the plaintiffs could meet the acceptance test, the evidence belies any suggestion that the club dedicated its beach for public purposes. No evidence of a clear or unequivocal intent to so dedicate has been shown. While the club may have suffered the use of its beach by the town, it did not grant full and unfettered use, " 'reserving to [itself] no rights therein inconsistent with the full exercise and enjoyment of such use.' " *Comber v. Inhabitants of the Plantation of Dennistown*, 398 A.2d 376, 378 (Me. 1979) (quoting *Northport*, 104 Me. at 346, 71 A. at 1029). On the contrary, the club posted signs indicating that the beach was private property, installed a chain and later a gate to control access, and checked the identification of visitors before allowing them to enter the beach area. These actions evince no clear intent to dedicate for a public purpose, but instead are entirely consistent with an attitude of private ownership. The Superior Court, therefore, could find no non-possessory interest by the public in the beach arising out of any act of dedication by the club.

■ The final means of effecting such a non-possessory interest is through an easement by prescription. Such easements in favor of the public, when asserted for recreational purposes over beaches and

6. The threshold dilemma posed by the claim of a public easement is one of standing. 14 M.R.S.A. § 812 is silent as to who may properly represent the public's interest in a suit to establish an easement. In *Blackmer v. Williams*, 437 A.2d 858 (Me.1981), we reserved the question of whether "the public, apart from some legally organized political entity, can lay claim to an easement by prescription." 437 A.2d at 862 n. 3. This issue differs from the one urged by the Attorney General as *amicus curiae*, who we feel misconstrues our discussion in *Blackmer*. The question posed by *Blackmer* is not, as the Attorney General would have it, "whether the public, apart from some legally organized political enti-

ty, can *acquire* an easement through prescriptive use," (emphasis added). That issue is long-settled in Maine. Rather, the question, to use the language of *Blackmer*, is whether, apart from some legally organized political entity, the public can "lay claim" to such an easement through the use of the courts of this State. In view of our disposition of this case, we need not address the issue reserved in *Blackmer*.

7. Plaintiffs have never claimed that the easement rights of the public were established by custom. *See State ex rel. Thornton v. Hay*, 254 Or. 584, 462 P.2d 671 (Or.1969).

shorelands, evoke complex evidentiary considerations. *See generally* Note, *Coastal Recreation: Legal Methods for Securing Public Rights in the Seashore,* 33 Me.L. Rev. 69 (1981). As a general rule, the party asserting an easement by prescription must prove continuous use for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence, or a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed. *Comber,* 398 A.2d at 378; *Forrester,* 391 A.2d at 833; *MacKenna,* 349 A.2d at 762 n. 3. Acquiescence by the owner to the use is essential, and, in this regard, the acquisition of an easement by prescription differs from the acquisition of title by adverse possession. *Pace v. Carter,* 390 A.2d 505, 507 n. 2 (Me.1978); *Dartnell v. Bidwell,* 115 Me. 227, 230, 98 A. 743, 745 (1916); *Rollins v. Blackden,* 112 Me. 459, 465, 92 A. 521, 525 (1914). Acquiescence implies "passive assent or submission to the use, as distinguished from the granting of a license or permission given with the intention that the licensee's use may continue only as long as the owner continues to consent to it." *Pace,* 390 A.2d at 507. Acquiescence is "consent by silence." *Dartnell,* 115 Me. at 230, 98 A. at 745.

■ In addition to the owner's acquiescence, it must be shown that use of the beach by the public was under a claim of right adverse to the owner. In a majority of jurisdictions, where there has been an open, unmolested, and continuous use for the prescribed period with the knowledge and acquiescence of the owner, such use is presumed to have been adverse. *See, e.g., MacDonald Properties, Inc. v. Bel-Air Country Club,* 72 Cal.App.3d 693, 701, 140 Cal.Rptr. 367, 373 (1977); *Ward v. Stewart,* 435 S.W.2d 73, 74–75 (Ky.1968); *Gerst v. Flinn,* 615 S.W.2d 628, 631 (Mo.App.1981); *Beutler v. Maynard,* 80 A.D.2d 982, 983, 437 N.Y.S.2d 463, 465 (N.Y.App.Div.1981); *Ludke v. Egan,* 87 Wis.2d 221, 230, 274 N.W.2d 641, 646 (1979); *but see, e.g., Cotton v. May,* 293 Ala. 212, 215, 301 So.2d 168, 170 (1974); *Jackson v. Hicks,* 95 Nev. 826, 829, 604 P.2d 105, 106 (1979); *see also* Note, *Coastal Recreation,* at 86–87. Maine stands with the minority, however, with regard to creation of public recreation easements by prescription in wild and uncultivated land, applying the rule that such open and continuous use raises a rebuttable presumption that the use was permissive. *See Forrester,* 391 A.2d at 833; *Piper v. Voorhees,* 130 Me. 305, 312, 155 A. 556, 560 (1931); *see also* Note, *Coastal Recreation,* at 90. This rule is predicated on the notion that such use by the general public is consistent with, and in no way diminishes, the rights of the owner in his land. *See Hubbard,* 124 Me. at 304, 128 A. at 288 (pointing to "open, unenclosed character of the land and the fact of its trifling value"); *Mayberry v. Inhabitants of Standish,* 56 Me. 342, 353 (1868) (focusing upon "open and unenclosed condition of the land, a sandy, pitchpine, blueberry plain of trifling value").

■ In the case at bar, neither party disputes the fact that persons other than club members have used the beach continuously for over 20 years. Our examination of the record, however, yields insufficient evidence to either (1) prove acquiescence on the part of the club, or (2) rebut the presumption that such use was permissive. Contrary to the town's assertions, the burden is not upon the club to prove that the use of its beach by the general public was permissive. While it is clear that the town spent both time and money to keep the right-of-way under repair and to assist with the maintenance and security of the beach, the evidence does not establish anything more than that such voluntary actions were taken subordinate to the right of ownership of the club in its beach.

## IV.

■ Equally unpersuasive is the plaintiffs' claim that the Town of Manchester as trustee for the general public acquired an easement in gross by virtue of the 1932 deed to Gould. A mere reservation in fa-

vor of one not a party to the deed cannot create any right in interest not previously existing. *Hill v. Lord,* 48 Me. 83 (1861). The plaintiffs apparently recognize that principle but assert, nevertheless, that the defendants are estopped to deny the existence of rights recognized by the reservation. We think it sufficient to observe that the plaintiffs have not proved the elements necessary to invoke the doctrine of equitable estoppel. *See Chapman v. Bomann,* 381 A.2d 1123 (Me.1978); *Interstate Industrial Uniform Rental Service, Inc. v. Couri Pontiac, Inc.,* 355 A.2d 913 (Me. 1976).

No useful purpose would be served by discussion of the remaining issue raised on appeal. The record herein supports the trial court's finding that prior to 1932 the route to the beach was through unenclosed and uncultivated land.

The entry is:

Judgment affirmed.

All concurring.