STATE OF MAINE                          SUPERIOR COURT
SOMERSET, SS                            CIVIL ACTION
                                        DOCKET NO. RE-00-010

NEW BALANCE ATHLETIC SHOE INC.,
        Plaintiff

        v.                              ORDER

GLEN LANEY,
        Defendant

Clerk of Courts
Somerset Court


## BACKGROUND AND PROCEDURAL HISTORY

New Balance Athletic Shoe, Inc. is a Massachusetts corporation in the business of manufacturing and distributing what used to be known as sneakers. In 1982, New Balance acquired a piece of real property in Skowhegan, Maine, from Skowhegan Realty, Inc. The parcel included a factory building that had formerly been used by Medwed Footwear, Inc., and a driveway that led from Route 201 back to the factory building. Glen Laney owns two parcels of land in Skowhegan adjacent to the New Balance property. In 1975, Mr. Laney acquired the first parcel, sometimes referred to as the "Beverage Mart," from the Dead River Company. He acquired the second parcel, sometimes known as the "rear parcel," from Skowhegan Savings Bank in May of 2000. Although the deed transferring the rear parcel to Mr. Laney in May did not include the right-of-way that Skowhegan Savings Bank had acquired in a deed dated March 5, 1982, the easement was transferred from the bank to Mr. Laney in a second deed, dated August 24, 2000. The right-of-way is described in that

deed as follows:

> A right in common with Skowhegan Realty, Inc., its successors and assigns, to pass and repass for the purpose of access to the premises conveyed by Skowhegan Savings Bank to Glen Laney by deed dated May 24, 2000 and recorded in the Somerset County Registry of Deeds Book 2676, Page 95, over that portion of what was formerly Factory Street as lies southeasterly of the property conveyed to Glen Laney by Skowhegan Savings Bank as set forth above. Said portion being 66 feet in width and extending from East Front Street in northeasterly direction 225 feet to a line extended South 50 ° 35' 04" East from the northeasterly corner of said premises conveyed by Skowhegan Savings Bank to Glen Laney.

> Being a right-of-way conveyed by Harvey J. Putterbaugh in his capacity as Trustee in Bankruptcy of the estate of Skowhegan Realty, Inc.to Skowhegan Savings Bank dated March 5, 1982 and recorded in the Somerset County Registry of Deeds Book 1024, Page 239.

In English, that language gave Mr. Laney a right-of-way from Route 201 onto the second parcel over the New Balance driveway. A dispute over the interpretation and use of this right-of-way provided the groundwork for this law suit.

After acquiring the rear parcel, Mr. Laney began construction of a truck stop/convenience store that extended over his parcels. The project began in July 2000, when he brought in fill to raise the grade of the rear parcel up to the level of the front parcel. New Balance representatives noted this activity, and spoke to Mr. Laney about his intentions. When they learned what he planned to do, they informed him that he would not be permitted to use the New Balance driveway to access the Beverage Mart property. Mr. Laney informed New Balance that, based upon the right-of-way language quoted above, he had the right to use the driveway. He also told New Balance that he would do whatever was necessary to complete his project.

In a letter dated August 17, 2000, New Balance warned Mr. Laney that he was encroaching on its property rights. At about the same time, New Balance erected snow fencing along the front boundary of its property. After two days, the fencing was torn down and thrown into a nearby ditch.

On September 12, 2000, New Balance filed a complaint against Mr. Laney requesting declaratory judgment, and injunctive relief, as well as damages for his alleged trespass. At the same time, New Balance requested a preliminary injunction to prevent Mr. Laney from using its driveway. In an order dated December 6, 2000, the Superior Court (*Mead, C.J.*) denied its request for the preliminary injunction.

Trial on this case was held on June 12, 13, and 14, 2001. The presentation of evidence was preceded by a view of the Laney and New Balance properties. During the trial, the parties presented numerous witnesses and exhibits in an attempt to demonstrate the historical use of Factory Street. In addition, each side presented expert testimony to assist the court in determining the legal effect of such use and the appropriate use of the disputed right-of-way. New Balance claims that Mr. Laney lost his right to use the right-of-way to access the rear parcel because he "merged" his two parcels, and that any current use of the easement would now unlawfully overburden it. Mr. Laney claims that he, his predecessors, and the general public acquired a prescriptive easement over the driveway, and that he has the right to use the driveway to access any part of his property.

At the close of the case, the court granted judgment for New Balance on Mr. Laney's counterclaims against it. Remaining for decision are New Balance's

requests that Mr. Laney be enjoined from using the express right-of-way to his rear parcel for the benefit of his front parcel, its allegation that Mr. Laney has trespassed on and damaged New Balance's land, its request that Mr. Laney be ordered to commit no further trespass on New Balance's driveway for purpose of gaining access from Route 201, its request for an award of damages for the trespass that has already occurred, and for the cost of restoring its land. New Balance has requested judgment against Mr. Laney for the restoration cost, in addition to statutory penalties and attorneys fees permitted by 14 M.R.S.A § 7551-B.

After the evidence closed on June 14, counsel for the parties requested that a transcript of the hearing be prepared. The transcript was filed with the Superior Court for Somerset County on November 16, 2001; counsel for the parties filed their briefs on November 30, 2001.

The findings and conclusions below were made after reviewing the transcript, the stipulations of the parties, the exhibits, and the submissions from counsel.

### FINDINGS AND CONCLUSIONS

When New Balance took over the former Medwed Footwear Factory in 1982, "Factory Street" was no longer a street. It had not been maintained by the Town of Skowhegan or by the footwear company for years and, as a result, was already overgrown with brush and trees. The condition of Factory Street continued to deteriorate over the next fifteen years until New Balance began a substantial landscaping and grounds improvement project in 1997. Steve King, Human Resource Manager for New Balance, testified that the project was intended to create

4

a "campus look" for this formerly industrial site, and to construct a second parking lot with more direct access to Route 201.

The driveway was completed in 1999. It was only then that Mr. Laney started improving his property. Mr. King asked Mr. Laney what was going on after he noticed that Mr. Laney had placed fill on New Balance property and had removed some trees from New Balance property. During that conversation, it became clear that Mr. Laney and New Balance had a disagreement about their respective rights to the driveway. Several weeks later Mr. King, Mr. Laney, and some representatives from the Town of Skowhegan all met in an effort to resolve the disagreement. At that meeting, Mr. Laney told the New Balance representatives that he intended to complete his project, and that if they planted trees, he would just rip them out with his backhoe.

There is no real dispute about the ownership of the driveway. Factory Street was once a public way. When a public way is discontinued, the property owners on either side of the road are generally able to claim ownership to the middle of what used to be the road. However, at the time that Factory Street was abandoned by the Town, the entire parcel, on both sides of the road, belonged to American Woolen. Therefore, when the road was discontinued, the ownership of the road reverted to American Woolen. American Woolen owned all of the land under Factory Street when the public easement was created, and, when the road was discontinued in 1946, the easement just disappeared, leaving the owner, American Woolen, intact. Mr. Laney's assertion that he owns any portion of the former street is without merit.

5

In addition, there is no real dispute about the use of the right-of-way Mr. Laney acquired in August 2000 to access the front parcel. As the deed quoted above states, Mr. Laney's rear parcel does have a sixty-six foot wide right of way across the New Balance driveway that was conveyed with that parcel. This right-of-way is an appurtenant easement, *i.e.*, it "belongs" to and serves the land itself, rather than the person who owns the land.

That restriction has a particular application here, because Mr. Laney has attempted to merge his front and rear parcels. Although he is free to do so for any number of planning or zoning purposes, the "merger" cannot enlarge the easement. The easement belongs solely to the rear parcel, and it can only be used to access the rear parcel. Any use of the easement to service the front parcel, where the convenience store is located, acts as a trespass upon and an overburdening of the "servient estate," *i.e.*, the New Balance driveway. New Balance has requested that the court enjoin Mr. Laney from using the rear easement, for any purpose, because its use would necessarily be for the benefit of the front parcel on which his store is situated.

The "overburdening" is both legal and actual. Any use of a right-of-way that exceeds its stated limits may be deemed an overburden. In addition, the entrance Mr. Laney created from the driveway to his rear parcel impacts the safety of New Balance employees. Trailers parked or stopped so that their drivers could make use of Mr. Laney's facility have occasionally blocked a portion of the driveway, and the

6

easiest route to Mr. Laney's property via the driveway involves an angled entry that cuts across both travel lanes.

New Balance has two work shifts at its property. The first shift begins at 6:30 A.M. and ends at 3:00 P.M.; the second shift begins at 3:00 P.M. and ends at 11:30 P.M. Approximately 300 people work during the first shift, and nearly half of those use the new driveway. Only twenty-five or thirty people work on the second shift, but most of them use the new driveway. In addition to that traffic, two New Balance trucks come in and out daily to unload materials. New Balance can control the arrival and departure times of those trucks to avoid conflict with the shift changes, but it has no control over the timing of the trucks that might wish to use Mr. Laney's business.

In addition, since Mr. Laney's construction, the driveway no longer drains properly. Daniel Morabito, project manager for the plant renovation, explained that his drainage plan for the improved driveway included both elevation changes and a swath of vegetation between the driveway and Mr. Laney's property. Before Mr. Laney began his own project, rain would hit the pavement of the driveway, roll down to the vegetation, and either be absorbed there or channeled into the drainage system serving the rest of the New Balance property. Now the driveway is not draining, and the runoff from Mr. Laney's asphalt-covered lots is going onto the New Balance property. Legally and actually, the use of the driveway to access Mr. Laney's property has overburdened New Balance's property.

The remaining issue in this case can only be decided after a review of the history of Factory Street. In order to demonstrate that he, his predecessors, or members of the public acquired a prescriptive easement, Mr. Laney must establish, by a preponderance of the evidence, that there has been

> continuous use for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence, or a use so open, notorious, visible and uninterrupted that knowledge and acquiescence will be presumed. Acquiescence by the owner to the use is essential, and, in this regard, the acquisition of an easement by prescription differs from the acquisition of title by adverse possession.

*Shadan v. Town of Skowhegan*, 1997 ME 187, ¶ 6, 700 A.2d 245, 247, quoting *Town of Manchester v. Augusta Country Club*, 477 A.2d 1124, 1130 (Me. 1984). There is no evidence in this record that New Balance or its predecessors agreed to the use of the driveway for access from Route 201 to Mr. Laney's front parcel. Therefore, Mr. Laney must demonstrate that any use was so open, notorious, visible, and uninterrupted that New Balance's knowledge of it and acquiescence to it should be presumed.

A prescriptive easement, if proven, is necessarily limited by the nature of the use made during the prescriptive period. *Eaton v. Town of Wells*, 2000 ME 176, ¶ 41, 760 A.2d 232, 246. For that reason, both the evidence of specific use of the driveway to access the Laney parcels, and more general use of the drive has been discussed.

In support of his contention that a prescriptive easement had ripened over a portion of the driveway where it connects to Route 201, Mr. Laney presented testimony from Allan Trask, Richard Folsom, Armand Sirois, Richard Vicneire,

8

Linwood Turner, Patrick Rodden, Francis Kollar, Reginald Washburn, and Michael Sackett. New Balance rebutted this phalanx of witnesses by calling Sheldon Kilkenny and Norman Shaw. In addition, each party had its own expert: Scott Smith for Mr. Laney and Knud Hermanson for New Balance.

Mr. Laney testified that he has used the northern end of the driveway (the portion closest to Route 201) to access the front parcel for decades. Although he has only owned that parcel since 1975, he leased it from its previous owner from 1969 until 1974. In addition, Mr. Laney maintained that the general public has always driven across the driveway to reach the front parcel, and has driven down the drive to get to the former ball field or to the shoe factory.

Mr. Sirois and Mr. Kollar were former managers of the businesses that once existed at the current Beverage Mart location. Mr. Kollar recalled that, during the mid-1960's, there was significant use of the driveway by the employees of the former shoe factory. Some of the employees did turn off of the driveway close to its boundary with Route 201 to drive onto the front parcel. Mr. Kollar did not recall any members of the public using the driveway to access the front parcel.

Mr. Sirois, who managed the business at the Beverage Mart site between 1973 and 1990, did occasionally see vehicles leaving the Laney front parcel when the normal exits were blocked by other vehicles. All access between the driveway and the front parcel described by Mr. Sirois and Mr. Kollar occurred within twenty feet of the driveway's boundary with Route 201.

Alan Trask delivered Coca-Cola products in the Skowhegan area for thirty years. In the course of that employment, he occasionally drove his pickup truck, van, or delivery truck from the present site of the Beverage Mart, across Factory Street, to what was once the Snack Shack. Mr. Trask recalled using that short cut during the 1980's, and could not recall seeing anyone else use the same path.

Richard Folsom used to operate a flea market on Route 201 at the Snack Shack property. Mr. Folsom kept a trailer right next to the boundary, and walked or drove across Factory Street to the Beverage Mart. He testified that the terrain was bumpy, that he did not maintain the path, and that it was not plowed in the winter. Mr. Folsom never used Factory Street to get onto his own property because there were telephone poles blocking the entrance.

Patrick Rodden owns property across Route 201 from the New Balance driveway, as well as the property that once held the Snack Shack. He is a lifelong resident of the area, and testified that he recalled seeing both pedestrian and vehicular traffic from the factory use the driveway to enter or leave the Beverage Mart property. In addition, he recalled traffic cutting across the driveway to go between the Beverage Mart and the flea market run by Mr. Folsom.

Mr. Rodden testified that the driveway was never blocked by trees or other growth. He asserted he had always been able to drive across it to reach the Beverage Mart. Mr. Rodden believes that he may own the half of the New Balance driveway that abuts his property.

10

Richard Vicneire has lived in the neighborhood behind the New Balance property for approximately twenty-eight years. In the late 1970's, he walked back and forth on the driveway to get to his job at Rodden Motors, or to buy things at the Beverage Mart. During the 1970's, some of the factory employees used the driveway to commute to work, and some people did cut across the driveway when exiting Route 201 onto the front parcel. However, as the tree growth took over, use of the driveway declined. Mr. Vicneire acknowledged that traffic across the driveway never occurred during the winter, because it was not plowed.

Linwood Turner has been a Skowhegan resident for forty-eight years. He recalled that there had once been a baseball field behind the Laney property, and that before 1973 the public frequently used the New Balance driveway to get to and from that field. In addition, those same people used the driveway to reach Mr. Laney's business. During the 1970's and until 1986, Mr. Turner saw cars on the driveway perhaps once each month.

Reginald Washburn has lived in Skowhegan for sixty-nine years. Mr. Washburn also recalled using the driveway to and from the ball field during the late 1960's and early 1970, and he, too, used the end of the driveway to reach the Beverage Mart from Route 201.

Scott Smith is a registered professional land surveyor. Mr. Smith's testimony was not based upon his physical examination of these areas, but rather upon his interpretation of aerial photographs of the area taken in 1955, 1973, 1984, and 1990. Mr. Smith initially testified that the photographs showed that the driveway had

consistently been used by vehicle throughout the period from 1955 to 1990. However, on closer examination, he candidly acknowledged that the photographs could not be used to provide evidence about who was using the road, how often, or for how long. Although the black and white photographs contain many areas of grey that are subject to various interpretation, a close review of the 1984 and 1990 photographs show distinct differences. By 1990, not even a path is visible.

Sheldon Kilkenny has been working at the New Balance site since 1973. Between 1973 and 1977 he worked for Lighthouse Footwear, and then from 1977 until in 1981 he worked for Standard Shoe. He began working for New Balance in 1982 when it took over the factory. Mr. KilKenny recalled that vehicles used Factory Street in the early 1970's every once in a while. However, the street was never paved after 1973 and neither Lighthouse nor Standard ever maintained the driveway by plowing, filling, or trimming.

In 1982, when Mr. KilKenny became responsible for security and began walking the property's perimeters, only three wheelers and dirt bikes were used on Factory Street. In 1985 or 1986, he directed that a gate be placed across Factory Street to stop even that traffic. That gate stayed up until 1997, when it was removed by New Balance.

Norman Shaw plowed the Beverage Mart site during the first half of the 1990's. Neither he nor anyone else plowed the New Balance driveway; he used that area to store the snow he removed from the Beverage Mart lot. Mr. Shaw was also the contractor hired to complete the driveway improvements in 1997. He testified

12

that it was not possible to drive a regular vehicle from the Beverage Mart property onto the New Balance driveway before the improvements were done.

Michael Sackett, a licensed professional land surveyor, surveyed all of this property in 1980 when it was acquired by Skowhegan Realty. At that time, tree and shrub growth made Factory Street impassable to the factory, and three utility poles within the first thirty-eight feet back from Route 201 blocked access to the Beverage Mart property via Factory Street.

In 1997, Mr. Sackett returned to the property to do another survey. At that time, the New Balance driveway was rough, over grown, and impenetrable. There was a 4% slope leading from the driveway to Route 201 that was much too steep to be driven safely. Although there was some evidence of vehicular traffic at the front of the driveway, the area used was within the right-of-way for Route 201.

Mr. Morabito, the project manager and lead designer for the New Balance landscape improvement project, took a number of photographs during the site evaluation phase in 1997. Those photographs show Factory Street overgrown with large trees. Those trees and the rest of the vegetation had to be removed, and fill had to be brought in, to create the new driveway.

Knud Hermanson is currently a faculty member at the University of Maine at Orono. He is also a licensed professional land surveyor, a physical engineer, and an attorney, licensed to practice law in Maine and Pennsylvania. In preparation for his testimony in this case, Dr. Hermanson had physically evaluated the parcels,

reviewed maps, deeds, and other documents, and read the deposition testimony of various witnesses.

## DISCUSSION

When describing the use of the New Balance driveway to access Mr. Laney's front parcel, all of the witnesses except Mr. Washburn described a general "entrance" that was close to Route 201. Even if all of the testimony of Mr. Laney's witnesses is accepted as describing adverse use that was known to New Balance, the evidence does not support a finding that the use was continuous and uninterrupted for a period of at least twenty years. Based upon Mr. Sackett's testimony, the court finds that, in 1980, there was no discernible evidence of ongoing vehicular traffic at the head of the driveway. Mr. Laney's assertion that New Balance should have been on notice that the public was using its driveway to access his parcel is not supported by the evidence.

In addition, Mr. Sackett's testimony about the topography of this area and the placement of utility poles, along with the various diagrams submitted, has convinced the court that what most of the witnesses[1] saw was access to the lot in and along the shoulder of the road. Given the apparently permanent placement of the utility poles, no other explanation makes any sense.

Even if a portion of the traveled area was within the New Balance property, this use was, at best, seasonal, because the driveway was never plowed. This type of

---

1. Mr. Washburn's testimony simply does not make sense when reviewed with the testimony from all of the other witnesses.

14

seasonal use is insufficient to establish a prescriptive easement for year-round access to the front parcel, given the nature of this property:

> Intermittent use may be continuous for purposes of establishing a prescriptive easement if it is consistent with the normal use that an owner of the property would make and is sufficiently open and notorious to give notice to the owner of the servient estate that the user is asserting an easement.

*Great Northern Co., Inc. v. Eldredge*, 686 A.2d 1075 at 1077 (Me. 1996). There is no rural setting at issue here. For the past thirty years, the businesses located at the Beverage Mart site have been open year round. Continuous use of this path to establish a prescriptive easement, therefore, must necessarily include use during the winter. Even if all of the testimony of Mr. Laney's witnesses is accepted as accurate, none of them testified that the route asserted by Mr. Laney had ever been passable during the winter months.

The bulk of the use described by the witnesses was for travel to and from the footwear factory by its employees. That use would not be adverse to the owner. In addition, any use for recreational purposes, such as the all terrain vehicles or dirt bikes described by Mr. Kilkenny is presumed to be permissive, and not adverse to the owner. *S.D. Warren Co. v. Vernon*, 1997 ME 161, ¶ 16, 697 A.2d 1280, 1284. Mr. Laney has presented no evidence to rebut that presumption.

Because there is no public or private prescriptive easement across or along the New Balance driveway, Mr. Laney does not have the right to use the driveway to access his front parcel. By combining his two parcels into one truck stop/convenience store, he has unlawfully expanded the use of the right-of-way. To

15

correct that, he must be enjoined from using the express right-of-way to his rear parcel for the benefit of his front parcel.

The testimonial evidence presented, as summarized in plaintiff's exhibit 14, has convinced the court that Mr. Laney committed common law trespass on New Balance property when he placed fill, removed trees and other vegetation, and installed pavement within the boundaries of the New Balance driveway. Title 14 M.R.S.A. § 7551-B permits an award of double damages for trespass, plus additional costs, if the damage to the property included damage to a road, drainage ditch or culvert, and if the damage has been caused intentionally.

In this case, Mr. Laney did damage the road by interfering with its drainage, and did damage the drainage culvert by filling it. Although Mr. Laney's actions were intentional, the evidence is not sufficient to support a finding that the damage was intentional. Mr. Laney wanted the driveway to remain in good, working order, because he wanted his customers to use it easily.

The loss of a vegetation buffer between the New Balance Property and the Laney property detracts from the campus atmosphere the project was intended to promote. In order to solve both problems, Mr. Morabito has suggested installing a rough retaining wall and replanting some vegetation to correct any erosion. He has estimated that the installation of a retaining wall, the removal of the pavement that now exists on the New Balance property, the correction of the drainage system, and the replanting of the front parcel will cost New Balance between $6,000 and $8,000.

16

Moving the location of the entrance from the driveway to Mr. Laney's rear parcel would require additional work, and would cost an additional $8,000 or $9,000. A portion of the cost is attributable to the need to contour the property to account for the raised level of Mr. Laney's property. Although it might be possible to correct the problem with something other than a retaining wall, the wall with improved drainage would solve New Balance's concerns while allowing Mr. Laney to retain his paved area.

Based upon the evidence presented, the court grants the relief requested by New Balance. Glen Laney is barred from using the rear easement for access to his front parcel, or any use of the front parcel. In addition, the court is satisfied by a preponderance of the evidence that Mr. Laney trespassed on New Balance's property, and that New Balance will be required to pay between $14,000 and $17,000 to correct the damage done by the trespass. Based upon that testimony, damages in the amount of $14,000 are awarded to New Balance on its trespass claim.

The statute also permits recovery of reasonable attorney fees for preparing the claim and bringing court action. Based upon the evidence presented, reasonable attorney fees will be awarded. Counsel for New Balance is ordered to file an affidavit of the fees incurred within ten (10) days after receipt of this Order.

### ORDER

Plaintiff's request for injunctive relief is granted. Glen Laney is barred from using the rear easement for access to his front parcel. In addition, judgment in the amount of $14,000 is awarded to New Balance against Mr. Laney on the trespass claim.

Attorney fees will be awarded upon receipt of an attorney fee affidavit from counsel for New Balance.

The clerk is directed to incorporate this order into the docket by reference.

DATED: January 16, 2002

Ellen A. Gorman
Justice, Superior Court